In the Matter of the Judicial Settlement of the Accounts of JOHN FRANKENHEIMER and EDWARD A. MERDIAN, as Executors, etc., of LOUIS GANS, Deceased.

SARA GANS HACKES and Others, Appellants, *v.* JOHN FRANKENHEIMER and EDWARD A. MERDIAN, as Executors, etc., of LOUIS GANS, Deceased and Others, Respondents.

First Department, February 5, 1909.

Will construed — provision that legacies shall abate if estate is not estimated at certain value — debts and expenses should be deducted — surrogate — review of valuation by executors — when provision that legacies abate not revoked by codicil — bequest for specific purpose — interest on legacies.

Where a will, after making certain legacies, provides that they shall be paid in full only in case the "total estate" as valued by the executors shall amount to a certain sum, but if the estate be valued at a less sum the legacies shall abate proportionately, the estate should be valued by deducting from the total property the debts and expenses of administration.

*It seems*, that although the executors were given discretion in estimating the amount that would be realized in converting the estate into money for distribution, their action would be reviewable by the surrogate if they erroneously included or excluded items.

Although the testator by a subsequent codicil in his own handwriting directed that all the "charity bequests shall be paid in full; the inheritance tax shall be paid by my estate," there was no revocation of the clause of the will providing that all legacies should abate proportionately if the estate was not valued at a certain sum. The testator merely intended that no deduction from the charitable bequests should be made on account of the inheritance tax which should be paid from the residuary estate.

Where a codicil gives sums "in addition to the amount given in my last will and testament," the additional sums are subject to the same conditions as the original legacies in the absence of anything in the codicil indicating a contrary intent, and hence are subject to an abatement imposed on the original legacy.

But where a codicil makes an additional legacy to a hospital for the purpose of buying a "perpetual bed" in memory of the testator's wife, he will be deemed to have intended to exempt the gift from the abatement, as otherwise the gift might be rendered ineffectual.

Where the amount of legacies subject to abatement cannot be determined until the debts and expenses of administration are ascertained, the legatees are not entitled to interest on the expiration of one year after the granting of letters testamentary, as is the general rule; but the right to interest accrues only when the amount of the legacies has been determined.

But beneficiaries taking general legacies not subject to abatement are entitled to interest after the expiration of one year from the date of letters, the same to be paid out of the accrued income in the hands of the executors, while the balance of the accrued income not included in the valuation of the estate for the purpose of distribution should be divided *pro rata* between the residuary and general legatees whose gifts were subject to abatement.

PATTERSON, P. J., and LAUGHLIN, J., dissented, in part with opinion.

SEPARATE APPEALS by Sara Gans Hackes and others and by Louis J. Hoefner and others, from portions of a final decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 2d day of September, 1908, judicially settling the accounts of the executors of the estate of Louis Gans, deceased.

For opinions of surrogate see *Matter of Gans* (60 Misc. Rep. 282; N. Y. L. J., Aug. 19, 1908; Id. Sept. 1, 1908).

*Everett V. Abbot,* for the appellants Sara Gans Hackes and others.

*Eugene D. Hawkins* and *Alfred Gregory,* for the appellants Louis J. Hoefner and others.

*Ferdinand Kurzmann,* for the executors, respondents.

*Gherardi Davis,* special guardian for the respondent Camilla Kohn Kerekes.

*Abraham Nelson* [*Simon H. Glasscheib* with him on the brief], for the respondent Beth Israel Hospital Association.

*F. R. Minrath* [*Henry Siegrist, Jr.,* with him on the brief], for the respondents Hebrew Sheltering Guardian Society and others.

*Melville H. Cane,* for the respondents Joseph Gans and others.

*Henry L. Moses* [*S. M. Stroock* with him on the brief], for the respondent Montefiore Home.

*Morris A. Hulett,* for the respondent Lebanon Hospital Association.

*Benjamin Tuska* [*Abraham Tulin* with him on the brief], for the respondent Educational Alliance.

First Department, February, 1909.        [Vol. 130.

*James M. Chapman,* for the respondent Ada H. Merdian.

*Louis Marshall,* for the respondent Jewish Theological Seminary of America.

LAUGHLIN, J.:

The questions presented by this appeal involve no objection to the accounts of the executors. They relate only to the distribution of the estate and depend upon the proper construction of the will and codicils.

The testator died on the 7th day of February, 1904, leaving a last will and testament with five codicils thereto. The will and codicils were duly admitted to probate by one of the surrogates of the county of New York on the 7th day of December, 1904, and letters testamentary were duly issued thereon on the twelfth day of the same month.

The will is dated the 17th day of July, 1902. By the 1st clause of his will the testator directs his executors to pay his just debts and liabilities " including funeral and testamentary expenses " as soon after his death " as conveniently may be." In clause " Second " he makes seventeen charitable bequests of money aggregating $48,500, and by clause " Third " he directs the distribution of $3,500 in three items for charitable purposes. Clauses " Fourth " to " Ninth," inclusive, bequeath legacies to various persons, aggregating the sum of $75,000. These bequests, aggregating $127,000, are followed by clause " Tenth," which provides as follows :

" I expressly declare that the legacies mentioned in the preceding paragraphs of my will shall be paid in full only in case my total estate, as valued by my executors, shall amount to Three hundred thousand dollars, and in case my estate shall be valued by my executors at less than Three hundred thousand dollars, then the legacies hereinbefor mentioned shall abate proportionately."

This is followed by clause " Eleventh," by which he gives, devises and bequeaths "All the rest, residue and remainder of " his estate, " including all lapsed legacies and legacies that shall for any reason have failed to take effect," to his executors in trust to invest in three parts, two of four-tenths each and one of two-tenths for the benefit of certain relatives and others, with remainders over as therein provided.

The appellants are or may be interested in the residuary estate under the 11th clause of the will.

The will evidently was drawn by and executed under the supervision of an attorney, but the codicils are all in the handwriting of the testator and were, so far as appears, drawn and executed without the advice of counsel. The 1st codicil contains two specific legacies of a plate known as "Seder Schissel" and a punch bowl. The 2d codicil gives to E. A. Merdian, a legatee to whom a legacy is left under one of the clauses of the will preceding the 10th, $5,000 "in addition to the sum left" to him by the will, and contains certain specific legacies of furniture, silverware and jewelry. The 3d codicil bears date July 1, 1903, and, omitting the date and the signature of testator and the witnesses, it is as follows:

"I, Louis Gans, of the City, County and State of New York, do hereby add this codicil to my last will and testament. I hereby direct that all my charity bequests shall be paid in full; the Inheritance Tax shall be paid by my estate. I give and bequeath to Montefiore Home of the City of New York the sum of Twenty-five hundred dollars in addition to the amount given in my last will and testament; said Twenty-five hundred dollars are for the purpose of buying a Perpetual Bed in memory of my dear wife Fannie Gans. Inscription, In memory of Fannie Gans, erected by her husband Louis Gans.

"Signed, sealed this first day of July, 1903, in presence of witnesses."

The 4th codicil, so far as material to the questions presented, devises his house known as No. 134 East Seventy-second street in the city of New York, "together with all the furniture, books, pictures belonging to the house." The 5th codicil bequeaths a policy of life insurance on the life of the testator for $10,000 and cancels certain debts.

One of the principal questions presented for decision is what testator meant by "total estate" in the 10th clause of the will. The learned counsel for appellants contend, in effect, that those words are equivalent to net estate for distribution to the general and residuary legatees, and that it excludes the expenses of administration, including the commission of the executors and the specific legacies and devises as well. The executors, with the exception of

First Department, February, 1909.          [Vol. 130.

one small item, which evidently was an oversight and is not brought in question here, valued the estate for the purposes of the 10th clause as embracing all of the property left by the testator after the payment of his debts, funeral expenses and the expenses of administration. They found this to be $258,000, which is eighty-six per cent of $300,000, and would give the general legatees eighty-six per cent of their legacies as first specified in the will, fourteen per centum being abated by the 10th clause. The learned surrogate was of opinion that the expenses of administration, funeral expenses and commissions of the executors should not have been deducted, and he modified their valuation by adding these items thereto, which made the total estate $286,352.05, giving the general legatees ninety-five and one-third per cent of their legacies, as first specified in the will. I am of opinion that the executors adopted the correct theory of construction, and that the learned surrogate erred in modifying their valuation. The property of the testator was invested in various parts of the country and in a variety of enterprises. He doubtless foresaw that the expenses of administration would be heavy, but he could scarcely have estimated the amount with any degree of accuracy. The purpose of the 10th clause of the will was to reduce for the benefit of the residuary legatees, the general legacies, provided the executors valued the net estate for distribution at less than $300,000. He had bequeathed in general legacies the sum of $127,000, but he intended that the executors, before paying those legacies, should carefully estimate the value of his estate that would be left for distribution, and directed, in effect, that if there would not be $300,000 or more for distribution between the general and residuary legatees, so that the latter, as he then planned, although he subsequently modified it by codicils, should receive at least, $173,000, the general legacies should abate in proportion. In other words, I think he intended that if the net estate for distribution should, for instance, be only $200,000, instead of $300,000, the general legatees should receive only two-thirds of the legacies which they would have received in full had the net estate for distribution been $300,000. No authority precisely in point on the construction of this will has been cited or found, but there are decisions quite analogous which tend to sustain the views here expressed. (*Smith* v. *Terry*, 43 N. J. Eq. 659; *Blakeslee* v. *Pardee*, 76 Conn. 263.)

This conclusion probably renders it unnecessary to decide whether, as claimed in behalf of some of the appellants, the executors were given discretion in valuing the estate which cannot be reviewed; but it would seem that, although they were necessarily vested with discretion in estimating the amount that would be realized in converting the estate into money for distribution, they were not vested with any discretion with respect to the *construction* of the will or the *basis* upon which the valuation was to be made, and that if they erroneously included or excluded items, their action would be reviewable by the surrogate.

The learned surrogate also held that the 3d codicil annulled or revoked, as to the charitable bequests, the 10th clause of the will. I am of opinion that this also was an error. At the time this codicil was made the Transfer Tax Law,* so called, imposed a tax of five per cent on such charitable legacies which would have been deducted from the legacies, so that the legatees would have received but ninety-five per cent of the *specified* amount of the legacies if the testator had then died and left an estate which would have netted for distribution the sum of $300,000 or more, and if less than that sum then only ninety-five per cent *of the amount to which the legacies would be abated* by the 10th clause of the will. I think that the testator merely intended by directing that all of his " charity bequests shall be paid in full ; the Inheritance Tax shall be paid by my estate," that no deduction should be made from the charitable bequests on account of the tax and that his residuary estate should pay it. His charitable bequests are paid in full as made, when they are paid either in the amounts first specified or as reduced by clause 10 of the will without deduction of the five per cent inheritance tax. The facts that the testator wrote this codicil, that he was a layman and that he did not, as is shown by other parts of this and by the other codicils, use punctuation points according to any recognized rule of authority, or as they are ordinarily used by educated people, have not been overlooked, and controlling significance is not attached to the use of the comma. The testator was a man of intelligence and some learning and it

* See Tax Law (Laws of 1896, chap. 908), §§ 220, 221, 224, as respectively amd. by Laws of 1897, chap. 284 ; Laws of 1903, chap. 41, and Laws of 1901, chap. 173. — [REP.

First Department, February, 1909.          [Vol. 130.

would seem that if he had intended to annul the specific provision of the 10th clause of the will, which expressly provided that none of the general legacies should be paid in full unless the executors valued the estate at $300,000 or more, he would have referred to it specifically or would have more clearly shown such intention. As has been seen, the charitable bequests aggregated more than $50,000. He evidently was in doubt as to the amount of property he would leave. If the distributive estate should not equal $300,000 he had already directed that his residuary legatees should not be limited to the residuary estate left after the payment of the charitable and other general legacies, but that all such legacies should be reduced in the proportion that the distributive estate bore to $300,000. It appears to be conceded that the provision of the codicil with respect to the inheritance tax relates to the charitable bequests only. If the sentence in the 3d codicil should be disconnected upon the theory that he had two objects in mind, one to annul clause 10 of the will so far as it embraces the charitable bequests, and the other to relieve *some* legacies from the payment of the transfer tax, then it would be quite as reasonable to hold that all taxes on that part of the estate which was bequeathed by general legacies should be paid out of the residuary estate, as to hold that the provision in relation to the tax relates only to the charitable bequest. The specific legacies of land and the insurance policies were valued by the executors in determining the total value of the estate. The appeals are only from that part of the decree which gives the general legatees more than eighty-six per cent of their legacies which assumes the correctness of the valuation by the executors, and, therefore, the question is not presented as to whether those specific legacies or the other specific legacies should have been included in the valuation, because if they should not have been included the allowance to the general legatees would have been less than eighty-six per cent, and, as has been seen, no objection is presented by the appeal to the decree in so far as it allows the general legatees eighty-six per cent of the legacies as first specified in the will.

The surrogate held that the *additional* legacies given by the codicils are not subject to abatement under the 10th clause of the will. The correctness of that ruling is challenged by the learned counsel for one set of the appellants whose notice of appeal

specifically brings up for review the allowance of more than eighty-six per cent of the additional legacy of $5,000 to Merdian in the 2d codicil and of more than eighty-six per cent of the additional legacy of $2,500 to the Montefiore Home in the 3d codicil. These legacies are given in form as *additional* legacies which in the absence of anything in the codicil indicating a contrary intent are under well-settled rules of law to be read into the will and become subject to the conditions to which the original legacies to the same parties in the will are subject. (6 Am. & Eng. Ency. of Law [2d ed.], 181; Roper Legacies [2d Am. ed.], 873–876; *Thompson* v. *Churchill*, 60 Vt. 371; *Pond* v. *Allen*, 15 R. I. 171; *Gray* v. *Sherman*, 5 Allen, 198. See, also, *Pierpont* v. *Patrick*, 53 N. Y. 591; *Hard* v. *Ashley*, 117 id. 606, 613.) I am of opinion that the additional legacy to Merdian falls within this rule, for it is merely an increase of the amount of the original legacy and that it is, therefore, subject to abatement under the 10th clause of the will. The additional legacy in the 3d codicil to the Montefiore Home, however, was given for a specific purpose which since the testator is presumed to have had in mind the abatement of the legacies under the 10th clause of the will might be rendered ineffectual unless the specific amount were given without abatement. The fact that he had in mind the possibility of the abatement of the legacies distinguishes this case from *Wetmore* v. *St. Luke's Hospital* (56 Hun, 313), which, although not cited by counsel, renders the construction which I think should be given to this additional legacy exempting it from the operation of the 10th clause of the will somewhat doubtful.

The only other question presented for consideration is whether the general legatees are entitled to interest on their legacies as abated. The learned surrogate has allowed interest from the 12th day of December, 1905, or one year after letters testamentary were issued. The learned counsel for the appellants contend that since the legacies could not have been paid at once, payment being necessarily deferred until the executors could intelligently value the estate and since they were subject to abatement, no interest should be allowed excepting upon facts showing a wrongful refusal on the part of the executors to pay the legacies after proper demand therefor. They also claim that the payment of such interest out of the

estate is a taking, in part, of their residuary interest without due process of law. Interest upon legacies is not given either as a penalty or for the wrongful refusal of personal representatives to pay the legacies. The statute* gives the executors one year within which to marshal the assets and pay legacies. If, as in this case and in many cases, that be not done within the year, the estate has the benefit of the use of the money and the legacy, being like a debt due and payable at the expiration of one year after letters of administration or letters testamentary are issued, draws interest from that date. The executors account for upwards of $28,000 interest earned by the estate. The learned counsel for one set of appellants argues that all legatees, both general and residuary, should share in the accrued interest. There is no basis in law for that course. The general legatees have no interest in the accrued interest as such. I see no point to the alleged violation of section 1 of the 14th amendment of the Federal Constitution in allowing such interest, and the rule as here stated has been sanctioned by a long line of authorities in this and other jurisdictions. (*Matter of McGowan*, 124 N. Y. 526; *Thorn* v. *Garner*, 113 id. 198; *Matter of Erving*, 103 App. Div. 500; *Matter of Oakes*, 19 id. 192; *Matter of Spencer*, 16 R. I. 25; *Loring* v. *Thompson*, 184 Mass. 103; *Wood* v. *Penoyre*, 13 Ves. 326; *Bonham* v. *Bonham*, 38 N. J. Eq. 419; *Bradford* v. *McConihay*, 15 W. Va. 732.)

As no facts are in dispute it has been suggested that the decree may be modified in accordance with our views without a rehearing, and that on the settlement of the order the parties may be heard with respect to the form of the modifications.

It follows that the decree should be modified in accordance with these views, with costs to all parties separately appearing, payable out of the residuary estate.

PATTERSON, P. J., concurred.

SCOTT, J.:

I concur with Mr. Justice LAUGHLIN as to the proper construction to be given to the will of Louis Gans, deceased. I am unable to concur, however, in his conclusion that the pecuniary or general

---

* See Code Civ. Proc. § 2721 *et seq.*— [REP.

legatees are entitled to interest upon the several sums payable to them as legacies. The general rule undoubtedly is that interest should be allowed upon such legacies from the expiration of one year after letters of administration or letters testamentary are issued. The reason for this rule is that the statute* gives to such legatees the right to receive their legacies at the expiration of that time, and if the estate is not then so far liquidated that payment can be made the postponement of the time for payment is deemed to have been made for the convenience or advantage of the estate. In all the cases in which this general rule has been applied the amount of the legacy has been fixed, or readily ascertainable, and the delay in payment was not due to any question as to how much the legatee should receive. In the present case, under the construction of the will which we adopt, it could not be determined until the debts and expenses of administration were ascertained what would be the amounts of the general legacies, and at the same time and by the same computation it would likewise appear how much the residuary legatees would be entitled to receive. The legatees whose legacies were subject to diminution could have no right to demand payment of their legacies until the amount thereof had been determined, and the right to interest does not arise until the right to demand accrues. As to the general legacy which is not subject to diminution, I think that it is entitled to interest from the expiration of one year after the issue of letters to be paid out of the accrued income in the hands of the executors. The balance of that accrued interest which was not included in the valuation of the estate for the purposes of distribution, should be divided *pro rata* between the residuary legatees and the general legatees whose legacies were liable to diminution.

McLAUGHLIN and HOUGHTON, JJ., concurred.

Judgment modified as directed in opinions and as modified affirmed, with costs to all parties separately appearing payable out of the residuary estate. Settle order on notice.

* See Code Civ. Proc. § 2721 *et seq.*— [REP.