In the Matter of the Petition of JAMES S. DARCY and Others, Respondents, to Render and Settle Their Account as Executors, etc., of SAMUEL ROWLAND, Deceased.

BROOKLYN AND QUEENS YOUNG MEN'S CHRISTIAN ASSOCIATION, Appellant.

Second Department, December 21, 1928.

*Edward P. Lyon* [*Harold S. Lyon* and *Herbert B. Lee* with him on the brief], for the appellant.

*Edward W. Harris* [*Henry W. Jessup* with him on the brief], for the respondents Reba Tappan Morse, Louise R. Harris, E. Pierrepont Rowland and Henry Rowland.

*Wilson E. Tipple*, special guardian, for the respondent Caroline R. Rowland, an incompetent.

KAPPER, J. The appellant Brooklyn and Queens Young Men's Christian Association seeks a review of the final decree of the Surrogate's Court of Kings county which held said association within the purview of section 17 of the Decedent Estate Law, which, as amended by the Laws of 1923, chapter 301, and as it read at the time the will hereinafter mentioned was executed, provided as follows:

" § 17. Devise or bequest to certain societies, associations, corporations or purposes. No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

The decedent, Samuel Rowland, died October 7, 1924, leaving him surviving his widow, Caroline R. Rowland (an incompetent), and four nephews and nieces, his only heirs at law and next of kin. His net estate appears to be about $375,000. His will, after certain specific legacies, provided as follows:

"*Seventh.* Upon the death of my said wife or the earlier distribution of my Estate, as above provided for, all the rest, residue and remainder of my estate, both real and personal, of whatever nature and wheresoever situate, including any legacies that may lapse or fall for any reason, I give, devise and bequeath in two equal shares to the Northfield Schools, East Northfield, Massachusetts, for the joint benefit of the Mount Herman School and Northfield Seminary, and to the Trustees of the Brooklyn Young Men's Christian Association, the principal in each instance to be added to the endowment fund of the legatee, and only the net income therefrom to be used for the general purposes of said legatees as the Board of Directors or Trustees of each legatee may direct."

It is conceded that the testator devised and bequeathed more than one-half of his estate to corporate legatees, all of whom came within the classification of section 17 (*supra*), provided that the appellant is also to be so regarded.

Matters of fact were stipulated, amongst them the following:

"IV. It is further stipulated that each and every of said corporations is conducted exclusively for the purpose of its organization and no one of said corporations is conducted directly or indirectly for making any pecuniary profit for said corporation or any of its members or employees and no officer, member or employee of any of said corporations receives or may be lawfully entitled to receive any pecuniary · profit therefrom or from the operations thereof except reasonable compensation for services in effecting one or more of the purposes of said corporation."

In so far as concerns the appellant's coresiduary legatee, the Northfield Schools of Massachusetts, that institution or those institutions have accepted the surrogate's decree, as have all of the other corporate legatees referred to, the sole appellant being the Brooklyn and Queens Young Men's Christian Association, as already stated. The surrogate's decree shows that one-half of the net estate of the testator, which was made to include all of the corporate legatees classified as within the provisions of section 17 (*supra*), made the residuary portions of the appellant and the Northfield Schools, each $54,427.69.

It appears that the widow was, at the death of the testator, seventy-eight years of age. She is said to have an estate in her own right of about $500,000 with a clear net income of upwards of

$20,000. She has been adjudged an incompetent and a committee of her estate has been appointed.

The main argument of the appellant is that a literal reading of the statute (Decedent Estate Law, § 17) requires a holding that the Brooklyn and Queens Young Men's Christian Association is not a " benevolent, charitable, literary, scientific, religious or missionary society, association or corporation." The words " or purpose " were those added by chapter 301 of the Laws of 1923, and of course broadened the scope of the act.

" In order to determine the status of a corporation and to ascertain the purposes for which it was incorporated recourse must be had to the act by which it was incorporated or to its charter and the statute under the authority of which it was framed." (*Matter of De Peyster*, 210 N. Y. 216, 219.)

The appellant was incorporated by chapter 737 of the Laws of 1869. In agreed facts, the appellant stipulated that the objects of its incorporation as set forth in its said charter are " to improve the spiritual, intellectual, physical and social condition of its members and those whom they may admit to the privileges of said association, by means appropriate and in unison with the spirit of the Gospel." The charter was amended by chapter 437 of the Laws of 1884 by stating the objects of incorporation as follows: " The object of this corporation shall be, primarily, the improvement of the moral and spiritual condition of the young men of Brooklyn, by means always appropriate to, and in unison with, the spirit of the gospel; and secondarily, the improvement of their intellectual, physical and social condition by the same means."

The further amendment of the charter vested all of the property and funds under the control and management of a board of nine trustees to be known as " The Trustees of the Brooklyn Young Men's Christian Association." By chapter 419 of the Laws of 1924 the name of the Brooklyn Young Men's Christian Association was changed to the Brooklyn and Queens Young Men's Christian Association and the number of its directors was increased.

The constitution of the Brooklyn and Queens Young Men's Christian Association, in evidence so far as material, contains the following preamble:

" We, the active Members of the Brooklyn Young Men's Christian Association, actuated by a desire to promote the spiritual welfare of the young men of Brooklyn and its vicinity, and to improve their mental, social and physical condition, and impressed with the importance of concentrated effort to aid in accomplishing these objects, hereby agree to adopt, for our government, the following Constitution."

And the following " object " is set forth under the heading of article I of this constitution:

" Sec. 2. The object of the Association shall be primarily, the improvement of the moral and spiritual condition of the young men of Brooklyn, by means always appropriate to, and in unison with, the spirit of the Gospel; and secondarily, the improvement of their intellectual, physical and social condition by the same means."

Further provisions show the various classes of membership; and the duties of members are thus defined:

" Section 1. It shall be the duty of the Active Members to engage in one or more of the branches of Association work, among which are the following: To interest themselves in young men, residents or strangers in Brooklyn; to seek to bring them under moral and religious influences; to introduce them to the Members and privileges of the Association; to secure their regular attendance at, and membership of, some Evangelical Church, and to aid them, through the proper Committees, to secure suitable boarding places and to obtain employment.

" Sec. 2. They shall, as opportunity may permit, exert themselves to cement the bond of union, friendship, and fellowship existing between the churches to which they respectively belong and the Association, and to demonstrate that the work of the Association is supplementary to, and in harmony with, that of the Church."

The foregoing purposes, all in consonance with the acts of the Legislature defining the objects, coupled with the stipulation above quoted that none of the corporations named in the will " is conducted directly or indirectly for making any pecuniary profit," seem to me clearly to constitute the appellant a benevolent and charitable association, and that the gift of one-half of the residuary to it was for a benevolent and charitable purpose within the meaning and intent of section 17 of the Decedent Estate Law.

In *Matter of MacDowell* (217 N. Y. 454, 460) Judge SEABURY, writing for a unanimous court, said: " Many definitions of a charitable trust have been formulated, but all the definitions that have been attempted carry the implication of public utility in its *purpose.* * * * If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity."

In *Butterworth* v. *Keeler* (219 N. Y. 446) there was a bequest dividing a residuary estate into two parts, one of which the testatrix gave to the New York Skin and Cancer Hospital and the other

to her executors in trust " to be used and devoted by them to the establishment of a school for girls in the town of North Salem, Westchester County;" and, as stated by Judge CARDOZO, " the question is whether this latter gift is a valid charitable trust." It was said by the learned judge (pp. 449, 450): " That it is valid if it is charitable, is not disputed. The claim is made, however, by some of the next of kin that in truth it is not charitable. We think the claim is without merit. It is established law in this State that a gift for the promotion of education or learning is a gift for charitable uses. \* \* \* The rule is the same in England, in the Supreme Court of the United States, and in the highest courts of sister States. \* \* \* There is no conflict of opinion anywhere. The rule, of course, is different where the school or other institution is maintained for the profit of its owners. The purpose must be the promotion, not of private profit, but of public learning. It is not charity to aid a business enterprise. But the fact that fees are charged is not controlling. Most of our universities and hospitals would be excluded by such a test, yet universities and hospitals are unquestionably public charities. What controls is not the receipt of income, but its purpose. Income added to the endowment helps to make it possible for the work to go on. It is only when income may be applied to the profit of the founders that business has a beginning and charity an end. The line of division is the same whether the gift is devoted to education or to the relief of the poor, the halt and the blind. Charity ministers to the mind as well as to the body." (Citations omitted.)

It would seem as though little more could be added. In the case last cited we have a gift to education construed as a charitable gift. We have also a later pronouncement in *Unger* v. *Loewy* (236 N. Y. 73) where Cornell University was held incompetent to take, although an educational institution, because it fell within the inhibition of section 17 of the Decedent Estate Law. It was argued in that case by the university that the words " benevolent " and " charitable " were not comprehensive enough to include an " educational corporation." The contention was overruled, Judge ANDREWS in writing saying (p. 78): " We agree with the courts below that Cornell University and the other institutions mentioned come within the provisions of the Decedent Estate Law to which reference has been made. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485; *Butterworth* v. *Keeler*, 219 N. Y. 446.) The deceased may not bequeath to them, therefore, more than one-half of his estate after the payment of his debts."

In the Appellate Division, First Department, Mr. Justice SMITH

wrote for the court in *Unger* v. *Loewy* (202 App. Div. 213, 217), saying that " section 17 of the Decedent Estate Law contemplates a legacy to a college or university; " further, " a college or university is educational, scientific and charitable " and " By common knowledge the tuition fees paid in a university are a small part only of the expenses of the university."

In *Matter of Frasch* (245 N. Y. 174) a trust was created to establish a fund " for chemical research," the income to be devoted to research " in the field of agricultural chemistry, with the object of attaining results which shall be of practical benefit to the agricultural development of the United States." This trust was held valid as providing for a charitable use within the meaning of section 12 of the Personal Property Law, that statute applying to a " gift, grant or bequest to religious, educational, charitable, or benevolent uses."

*Matter of Rockefeller* (177 App. Div. 786) involved the question of exempting the Rockefeller Foundation from a transfer tax on a bequest to it. The institution was held exempt, as was also another legatee, the Bureau of Social Hygiene, which had been organized under the Membership Corporations Law for the " study, amelioration and prevention of those social conditions, crimes and diseases which adversely affect the well being of society, with special reference to prostitution and the evils associated therewith." The opinion of Mr. Justice PAGE contains the following interesting paragraph (p. 791): " The test of a charitable gift or use and a charitable corporation are the same. (*Matter of Altman*, 87 Misc. Rep. 255, 260.) The former has been thus defined: ' a charitable use, where neither law nor public policy forbids, may be applied to almost any thing that tends to promote the well doing and well-being of social man.' (*Ould* v. *Washington Hospital, etc.*, 95 U. S. 303, 311; *Tilden* v. *Green*, 130 N. Y. 29, 46.) Our Court of Appeals has recently said: ' Many definitions of a charitable trust have been formulated, but all the definitions that have been attempted carry the implication of public utility in its purpose. * * * If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness, unstained by personal, private or selfish considerations, its charitable character insures its validity.' (*Matter of MacDowell*, 217 N. Y. 454, 460.) In its popular acceptation a charitable corporation is one that freely and voluntarily ministers to the physical needs of those pecuniarily unable to secure for themselves, while a benevolent corporation is one that ministers to all, and the purpose may be anything that promotes the mental, physical or spiritual welfare of man."

As defining the status of the appellant, it is claimed that by

a definition laid down by this court in *Matter of Moses* (138 App. Div. 525) the appellant was held to be an " educational " institution. As I understand the appellant's argument, it is that, applying the cited case in its ruling fixing its status as " educational," it was, therefore, not within the spirit or letter of section 17 (*supra*). *Matter of Moses* determined the appellant an " educational " corporation as mentioned in the statute exempting a " religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation " from the burdens of the Transfer Tax Law. I am utterly at a loss to understand how that definition takes the appellant out of the scope of section 17, particularly when we see by the more recent cases in the Court of Appeals, above cited, that educational purposes, when not for private gain but *pro bono publico*, are charitable and benevolent within the meaning of the restricting law.

We are also favored by the appellant with a wealth of argument that, as the purpose of the restriction in section 17 was to prevent a person upon whom others in near relationship had claims from disappointing their just expectations and disinheriting them because of pious or philanthropic motives, and as the widow of the testator has an ample estate of her own, the statute should be construed favorably to the appellant. An approval of this claim would make of every case a question of fact as to the wealth or poverty of the widow, children, descendant or parent for whose benefit the statute was enacted. The argument answers itself.

A further contention of the appellant is based upon section 1, article 8, of the Constitution of the State, which provides: " Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws." It is urged that as the appellant was incorporated under special act it could not have been so chartered if its organization is charitable in purpose; hence, that it must be permitted to take an unlimited amount by will. The claim cannot prevail. In *Unger* v. *Loewy* (*supra*) it appeared that Cornell University, as well as Columbia University, was incorporated under special acts, notwithstanding which section 17 was held to include both. The learned Special Term in *Unger* v. *Loewy* (116 Misc. 628, 630) observed, and the reasoning is sound: " If we refer the words of the statute to corporations created under particular statutes and conclude that a corporation not created under such statutes is excluded from the operation of this statute, what is the result if the beneficiary happens to be a corporation created under the statute of another

State? Such a corporation would not be created under any of the statutes referred to and by this reasoning would be excluded from the application of the restriction. So we would seem to have the result that a testator might bequeath all of his property to a foreign corporation and only half to a corporation created under the laws of this State."

Moreover, it is to be noted that the constitutional inhibition excepts special formations of corporations where, " in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws." The judgment is that of the Legislature and not of the court, in the circumstances.

Another contention is that the word " any " in the statute permits a testator to give one-half of his estate to " any " *one* benevolent or charitable organization and the remaining half to " any " like organization or organizations. Authority says otherwise. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 440; *Bascom* v. *Albertson*, 34 id. 584.)

The conclusion should follow that the appellant must abide by the provisions of section 17 of the Decedent Estate Law and is limited in its bequest to so much of this residuary estate as, together with other bequests for charitable purposes, constitutes not over one-half of the net estate.

The appellant next claims that the amount which the learned surrogate decreed to be now due to it is $1,185.59 " short of the sum clearly due." The appellant's computation is based on an item of $4,742.38 which has been taken out of the gross estate and set apart for the widow by way of dower. The decree provides " that one-half of said net estate amounting to the sum of $192,531.44 subject to one-half of $24,080.13, the widow's dower with interest thereon from one year after probate of decedent's will as hereinafter stated, is all that may legally be paid to the above mentioned corporate legatees."

The dower provisions arose from the following circumstances as shown in the executors' main account: The committee of Mrs. Rowland elected that she take her dower interest and not under the will. Accordingly a contract for the sale of " all " of decedent's real property was made for the sum of $75,000. That was the sum fixed by the transfer tax appraiser as the true market value of the property, and he also fixed the value of Mrs. Rowland's dower interest therein as $4,742.38. The executors and her committee agreed to pay and to accept, respectively, this sum of $4,742.38 " in full satisfaction of said widow's dower interest." The Supreme Court, however, refused to approve of this agreement, and although an order was made authorizing the sale of

the property for $75,000 the court in this order directed the committee to receive one-third of the purchase price " and hold the same and apply the income therefrom to the use and benefit of said Caroline R. Rowland during her life." In accordance with this order one-third of the net proceeds, amounting to $24,080.13, was set aside for that purpose and paid over to the committee, so that upon Mrs. Rowland's death the proceeds will be divided between the residuary corporate legatees and the heirs and next of kin.

For reasons not disclosed the proposed and *rejected* cash value of the dower interest, $4,742.38, was carried into the present decree. In addition, the shares of the legatees and next of kin were subjected to the full amount of the dower interest computed in accordance with the order of the Supreme Court, namely, $24,080.13. It is clear, therefore, that the decree awards to the widow an excess of $4,742.38 over and above the principal sum of $24,080.13 from which she is entitled to receive income. The appellant's share should be augmented accordingly.

The appellant also contends that it is entitled to a greater rate of interest on its legacy than that allowed by the decree. The lesser rate was the actual amount earned on the legacy to which the appellant is entitled. That the interest allowed is that which was actually earned is not disputed. It is not claimed that the executors were remiss or that the controversy raised by the appellant was not adjudicated as speedily as possible. That the appellant could have demanded payment of the legacy *actually due* at the end of one year from the issuance of letters, from which time it was awarded interest actually earned, cannot be gainsaid, notwithstanding it had the right to adjudicate its interests in the estate. It seems to me that the reasoning of Mr. Justice Scott in *Matter of Frankenheimer* (130 App. Div. 454, 463; affd., 195 N. Y. 346) should apply: " The general rule undoubtedly is that interest should be allowed upon such legacies from the expiration of one year after letters of administration or letters testamentary are issued. The reason for this rule is that the statute gives to such legatees the right to receive their legacies at the expiration of that time, and if the estate is not then so far liquidated that payment can be made the postponement of the time for payment is deemed to have been made for the convenience or advantage of the estate. In all the cases in which this general rule has been applied the amount of the legacy has been fixed, or readily ascertainable, and the delay in payment was not due to any question as to how much the legatee should receive. In the present case, under the construction of the will which we adopt, it could not

be determined until the debts and expenses of administration were ascertained what would be the amounts of the general legacies, and at the same time and by the same computation it would likewise appear how much the residuary legatees would be entitled to receive. The legatees whose legacies were subject to diminution could have no right to demand payment of their legacies until the amount thereof had been determined, and the right to interest does not arise until the right to demand accrues."

In *Matter of Brown* (115 Misc. 710, 711) the learned surrogate writing on this subject said: " Interest should be figured on both of these legacies at the rate earned on the entire estate during that period. The delay was not occasioned by any neglect of the executor. The estate was in litigation, and the title to the whole estate was involved. The account shows that both the legacies were paid as soon as the executor could properly do so."

The appellant's last point contests the valuation placed by the learned surrogate upon certain stock which formed an asset of the estate. The result arrived at was based upon ample and competent evidence and was not affected by the reception of the testimony of the expert accountants, of which complaint is made, as, even assuming without determining that such testimony was improperly received, the proofs furnished by the company's own statements, the testimony of the president of the company and the appraisals of the company's real estate were sufficient to justify the finding.

The decree of the Surrogate's Court of Kings county should be modified by increasing the distributive share of the Brooklyn and Queens Young Men's Christian Association in the sum of $1,185.59, with the same interest thereon as was awarded by the decree in respect to such share, and as so modified the decree should be affirmed, with costs, payable out of the estate, to each party appearing on this appeal and filing a brief.

LAZANSKY, P. J., RICH, HAGARTY and CARSWELL, JJ., concur.

Decree of the Surrogate's Court of Kings county modified by increasing the distributive share of the Brooklyn and Queens Young Men's Christian Association in the sum of $1,185.59, with the same interest thereon as was awarded by the decree in respect to such share, and as so modified affirmed, with costs, payable out of the estate, to each party appearing on this appeal and filing a brief. Settle order on notice.