In the Matter of the Accounting of DONALD HARRIS, as Executor of WILLIS A. TRESCOTT, Deceased.

Surrogate's Court, Monroe County, April 16, 1951, on reargument, May 8, 1951.

*Earl F. Case* for executor, petitioner.

*John J. Conway, Jr.,* for Beulah L. Gayton and others, respondents.

*Leo G. Hosenfeld* for Cora G. Smith, respondent.

*Daniel G. Kennedy* for Lincoln Rochester Trust Company, as trustee under the will of Willis A. Trescott, deceased, respondent.

*Glenn L. Buck* for Clarence P. Le Frois, respondent.

*Arthur E. Rosenberg,* special guardian for Paul E. Trescott, an incompetent, and others, respondents.

WITMER, S. In the course of this judicial settlement proceeding the court is asked to determine whether or not interest is payable upon the general legacies, and, if so, from what date and at what rate or rates interest shall be computed. Testator died on May 12, 1938, and his net taxable estate was reported at about $90,000, approximately one third of which was liquid. The principal nonliquid assets consisted of farm real estate and a controlling stock interest in a corporation bearing testator's name, and manufacturing special machines used in agriculture and the fruit industry. Testator made his will about six months before his death, approximately eight years after the beginning of the 1929 depression. At that time a ready

market for his nonliquid assets was not apparent, and he provided authority to his executor as follows (par. " second ") : " at any time within the period of five (5) years next following my decease and at such times and in such manner as he may deem most advisable in the interests of my estate, to sell and convert * * * and to pay and distribute the same as hereinafter provided. During such period, not however exceeding five (5) years from the time of my death, I do hereby authorize and empower my said executor * * * to administer my estate and * * * to continue and operate any business in which I may be interested at the time of my death ". In paragraphs " Third " and " Fourth " he gave several general legacies to relatives and friends in amounts varying from $250 to $5,000. In paragraph " Fifth " he gave to respondent, Clarence P. Le Frois, the balance due upon a mortgage, plus an amount of money which, when added to the unpaid balance of the mortgage, would equal $7,500; and in paragraph " Sixth " he gave in trust for the benefit of three young men approximately $2,500 each, with the principal to be paid to them respectively on attaining twenty-five years of age. In paragraph " Seventh " he gave $10,000 in trust for his friend and housekeeper, Cora G. Smith, to have the use of the income and principal thereof as needed, the remainder to her heirs.

In paragraph " Eighth " testator provided: " It is my desire and intention and I do hereby provide that the legacies given by me in the ' Third ', ' Fourth ', ' Fifth ', ' Sixth ' and ' Seventh ' paragraphs hereof *shall carry income proportionate to the gross income of my estate from the date of my death until they are respectively paid,* that none of said legacies shall lapse," (emphasis supplied), and in the event of the death of any such legatee, the legacy to him shall be paid to his heirs. The testator further directed that said legacies should be free from all State and Federal inheritance and estate taxes, which he directed be paid " from my [his] gross estate." In the last unnumbered paragraph of paragraph " Eighth " he provided: " In the event my estate shall be insufficient to pay all of the legacies hereinbefore set forth, then I direct that the bequests set forth in the ' Third ' and ' Fourth ' paragraphs of this my last Will and Testament shall be paid in full, and all others proportionately from the remainder."

In paragraph " Ninth " testator gave the residue of his estate to eight of his " friends and business associates " or to those of them who should survive him.

The executor found no ready market for the realty nor for the stock for some years after testator's death. The ensuance of World War II is claimed to have contributed to the delay in liquidation. Ten years after testator's death proceedings for compulsory accounting were instituted, and after much skirmishing the estate at long last has recently been liquidated. It appears that part of the cause for the delay in the ultimate liquidation is the fact that the executor made a disposition of the stock which was improper. As a result of the objections filed to the account, the stock was returned to the estate for resale.

In the absence of evidence in testator's will of a contrary intent, general legacies bear interest from seven months after the issuance of letters testamentary (*Matter of Rutherfurd,* 196 N. Y. 311, 315; *Matter of Shevlin,* 143 Misc. 213, affd. 242 App. Div. 636; *Matter of Jacobs,* 154 Misc. 362), and where given in trust, the beneficiary is entitled to a proportionate share of the estate earnings from the date of testator's death until the expiration of seven months from the issuance of letters testamentary. (*Matter of Stanfield,* 135 N. Y. 292, 294; *Matter of Shevlin, supra.*) Thereafter, as damages for failure of the executor to pay the legacies, interest at 6% per annum is payable upon such general legacies, instead of a share of the estate earnings. (*Matter of Rutherfurd, supra*; *Matter of Harned,* 140 Misc. 151, affd. 234 App. Div. 796; *Matter of Taft,* 144 Misc. 896, 899-900; *Matter of Ayvazian,* 153 Misc. 467, 477-478.)

In the instant will, however (par. " Second " as quoted above), the testator extended the period of administration to five years. Such extension was legal. (*Matter of Graves,* 194 Misc. 394, 402-405.) Testator provided (par. " Eighth ") that the general legacies, including those in trust, " shall carry income proportionate to the gross income " of his estate from the date of his death " until they are respectively paid ". Those provisions clearly show testator's intention that at least during the period of administration as extended by him, all of the general legacies shall share in the income of the estate.

It is claimed on behalf of the general legatees that the testator meant them to share in the gross income of the estate without first deducting expenses normally chargeable to income. No such preposterous intention may be imputed to the testator from his use of the words relied upon, to wit, " shall carry income proportionate to the gross income ". It is true that testator's expression was not as clear as it should have been,

but his meaning cannot be in doubt. No income except net income could be available for payment to the legatees. The provision is construed as meaning " shall carry income proportionate to the total net income of " testator's " whole estate ". That is, the income of the entire estate, less income expenses, should be prorated among the general legatees named in paragraphs " Third " through " Seventh ". Since no income has been paid to the legatees, those of them who have not acknowledged payment in full of their legacies are now entitled to income thereon, if any there was (*Matter of Taft*, 144 Misc. 896, 899, *supra*), arising during the five-year period following testator's death, namely, to May 12, 1943, in the proportion which their respective legacies bear to the total of the general legacies.

It is also claimed that all of the unpaid general legacies are entitled to interest at 6% per annum from and after May 12, 1943, on the basis of their legacies' remaining unpaid thereafter. The executor and residuary legatees, however, assert that testator's qualifying words " until they are respectively paid ", show his intention that at no time should the legatees be able to demand more than a prorata share of the net earnings of the estate. The court cannot agree with the latter contention. These words must be read in connection with the testator's provision in paragraph " Second " of the will granting to the executor a period of five years in which to administer the estate. In the absence of a clear indication in the will of an intention to vary the rule that a general legacy bears interest from the end of the administrative period, interest must be paid at 6% per annum on the unpaid general legacies from May 12, 1943. (*Matter of Rutherfurd*, 196 N. Y. 311, 315, *supra*.)

It is further contended that as between the general and residuary legatees there is no right to charge the latter with interest upon the general legacies because the testator held the residuary legatees in equal esteem with the general legatees. The will does not sustain this argument. The testator provided that the gifts to the general legatees should go to the respective heirs of any such legatees who should predecease him, but provided that the residue should be divided among the residuary legatees who survived him. He also expressly preferred the legatees named in paragraphs " Third " and " Fourth " of the will over all others, and he showed no evidence of an intention to change the rule that a general legatee has priority over residuary legatees. Moreover, there was no relationship between

the testator and the residuary legatees. The case of *Matter of Frankenheimer* (195 N. Y. 346), upon which the residuary legatees rely, is distinguishable because there the residuary legatees were the testator's close relatives and he expressly showed his intention to prefer them.

I find no indication in the will which authorizes a holding that statutory interest should not begin to run from May 12, 1943, and, accordingly, I hold that interest must be paid from such date. No determination is made at this time as to whether the executor should be surcharged to any extent for this interest.

The attorney for Cora G. Smith, life tenant of the trust created for her under paragraph " Seventh " of the will, seeks an allowance for his services herein. Since the trustee of said trust is a party to this proceeding it does not appear that Cora G. Smith, the beneficiary, was a necessary party, but she has been a party to this proceeding and no one has questioned her status as such. The trustee was represented by other counsel. The attorney for Cora G. Smith, however, has performed substantial services in her behalf in this proceeding.

It is not apparent at this time that her attorney was acting in behalf of the executor or the estate in general in such a manner as to be entitled to compensation from the estate at large. (*Matter of Loomis,* 273 N. Y. 76; *Cowen* v. *Stine,* 275 App. Div. 915, affd. 300 N. Y. 698; *Matter of Sielcken,* 176 Misc. 235, affd. 263 App. Div. 866; *Matter of Ziegler,* 170 Misc. 748.) The executor was represented by his own attorney at all times. The best that can be said for counsel for Cora G. Smith is that he helped force the executor to recapture estate assets and perform his duty. Nevertheless, the executor, with the aid of his own attorney, accomplished this work himself, and it does not appear that the attorney for Cora G. Smith performed legal services for the executor or for the estate in general. As the above-cited authorities show, the legal services rendered for Cora G. Smith, so far as it appears, are not such as to entitle her attorney to be paid out of the estate at large. No allowance may be made to her attorney from this estate on the present showing, but if prior to the time of presentation of the decree herein a further showing is made to establish that he is entitled to some compensation under the authority of *Matter of Lounsberry* (226 App. Div. 291), and kindred cases, the court will give further consideration to his application.

The trusts created under paragraph " Sixth " of the will in favor of the three young men under twenty-five years of age

have terminated because each of said children has attained the age of twenty-five years. The trustee consents that the executor pay the balance due on such legacies directly to the beneficiaries, and the executor is authorized to do so.

Submit decree accordingly.

(On reargument, May 8, 1951.)

Before entry of a decree upon the decision herein dated April 16, 1951, the court's attention was called to a prior decree herein of October 6, 1950, in which upon stipulation of all parties appearing in the proceeding, the court resolved in favor of the executor the issues raised in the objections filed concerning his actions and conduct as executor, and dismissed such objections. No appeal was taken from such decree. In view of that decree the court has granted the request for reconsideration of its decision of April 16, 1951, and reargument has been had in the matter.

The existence of such decree, of course, takes from the court the right to consider in the future any question of surcharge of the executor.

The court adheres to its statement in the prior decision of the principles of law with respect to the payment of interest on general legacies. In such decision, however, the court failed to make a determination of the rights of the trustee and trust beneficiaries under paragraphs " Sixth " and " Seventh " of the will to receive interest after the expiration of the five-year administrative period authorized by the testator. Ordinarily, the beneficiaries are entitled to have paid to the respective trusts an amount of interest equal to such rate as the funds would have earned had the legacies been paid into the trusts when they should have been. Such interest is usually fixed at the rate of 4% (*Matter of Ayvazian,* 153 Misc. 467, 477; *Matter of Jacobs,* 154 Misc. 362; *Matter of Clarke,* 166 Misc. 807), and would be declared applicable herein from the termination of the administrative period on May 12, 1943, until the termination of the trusts which have terminated, except for the decree of October 6, 1950, which exonerates the executor. In view of such decree, if the estate earned income during the period interest would be payable only at the average rate of return earned by the estate for such period, and to the date of payment. (*Matter of Rowland,* 225 App. Div. 118, 127–128; *Matter of Lathers,* 137 Misc. 222; and see *Matter of Eidlitz,* 193 Misc. 316, 320.) The same is true as to all general legacies, for the same reason. Since the estate was unliquidated for years and virtually no income

was received thereon, and there has now been a substantial capital gain realized upon the sale of the assets, some other relief is in order.

Although the point has been made that the decree of October 6, 1950, is subject to being reopened because a copy of it with due notice of entry thereof was not served on some of the parties (*Redfield* v. *Critchley,* 277 N. Y. 336, and *Victory Bldg. Corp.* v. *Crist,* 267 App. Div. 941), the court can make no conditional determination on the assumption that the decree may be set aside.

If the general legatees and trust beneficiaries were limited to the actual estate earnings, they would receive virtually no income on their legacies despite the great delay in liquidation, and the residuary legatees would be greatly benefited by reason of such delay. The decree of October 6, 1950 establishes that this came about through the fault of no one. The problem is akin to salvage liquidation in which a fair interest return is apportioned out of the sum received. (See *Matter of Chapal,* 269 N. Y. 464; *Matter of Otis,* 276 N. Y. 101, and *Matter of McManus,* 282 N. Y. 420, 425.) This principle has been applied to the liquidation of unproductive estate assets. (*Matter of Pennock,* 285 N. Y. 475, 482; *Matter of Clarke,* 166 Misc. 807, *supra.*) As the last citations show, in such cases interest is to be computed " at the average rate earned upon legal investments " (285 N. Y. 475, 486, *supra*), and has been fixed at the rate of 4% (166 Misc. 807, 813, *supra*). In the light of the evidence in this case 4% is fixed as the rate of interest to which the general legatees and trust beneficiaries are entitled upon the unpaid balances of their respective legacies from May 12, 1943, to the date of payment.

Submit decree accordingly.