OPINION OF THE COURT
Leona Freedman, J.
Respondent moves to dismiss the holdover petition pursuant to CPLR 3211 (subd [a], pars 2, 7) on the grounds that the subject premises are not exempt from rent stabilization, or in the alternative, for leave to conduct pretrial discovery. Petitioner, the YMCA of Greater New York (YMCA), cross-moves (1) to amend its petition pursuant to CPLR 3025 (subd [b]) to include additional grounds of exemption from rent stabilization; (2) to dismiss respondent’s counterclaims; and (3) for an order directing the payment of use and occupancy.
The instant holdover proceeding was commenced against respondent Stephen Brandt, an occupant of Room No. 1165 at a branch of the YMCA known as the “West Side Y” and located at 5-11 East 63rd Street in Manhattan. Respondent as a week-to-week tenant agreed to pay a rental of $58.10 per week beginning on or about April 8, 1981. His room, like the other rooms at the Y, is rented to unmarried individuals. The accommodations are class B multiple dwelling units, i.e., single-room, dormitory-like accommo *577 dations without kitchen or bathrooms.[1] Twenty per cent of the rooms have been set aside for student housing. In addition to the housing facilities at the West Side Y, space is allotted for instruction in the areas of health and fitness, social and personal development, sports and recreation, and career development. These activities are offered to children, young adults, the elderly, families, the disabled, refugees, foreign nationals, residents from the community and YMCA residents. The West Side Y also operates a secondary school chartered by the New York Board of Regents known as the McBurney School.
The West Side Y is but one of 21 branches of the YMCA of Greater New York, which operates 202 program centers for the activities described above. The total amount of space for these activities equals approximately 1.8 million square feet, which does not include 1,600 acres north of the city devoted to three camps and a conference center. The 21 branches also contain approximately 5,200 dwelling units, including the subject room, which are rented on a day-today or week-to-week basis. According to the YMCA, these housing facilities are designed to serve as a student dormitory and as a temporary home for individuals without roots in the community, especially young adults, seeking secure and low-cost housing.
In 1971, the YMCA of the City of New York, which was incorporated by an act of the Legislature more than 125 years ago (L 1866, ch 350), and the YMCA of Brooklyn and Queens were consolidated under section 1404 of the Not-For-Profit Corporation Law as the YMCA of Greater New York. The Not-For-Profit Corporation Law was amended in 1971 (L 1971, ch 1058) to specifically designate the Young Men’s Christian Association and the Young Women’s Christian Association as type “B” associations. Type “B” associations are nonprofit corporations organized for one or more of the following nonbusiness purposes: charitable, educational, religious, scientific, literary, cultural or *578 for the preservation of services which prevent cruelty to children or animals (Not-For-Profit Corporation Law, § 201, subd [b]).
Also, in 1971 the Legislature recast the statutory scheme of exemption from real property taxation by making the legal basis for obtaining an exemption from taxation more restrictive.[2] Nevertheless, the Tax Commission, which is charged by law to re-examine the status of every exempt corporation each year (New York City Charter, ch 58, § 1507), continued to grant the West Side Y full exemption from real property taxation.
The essential issue dividing the parties is whether respondent’s room should be exempt from rent stabilization on the grounds that the West Side Y is owned or operated by an institution operated exclusively[3] for charitable or educational purposes under section 5 (subd a, par [6]) of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]).[4] If exempt from the coverage of rent stabilization, the YMCA would not be required to renew and could terminate respondent’s week-to-week tenancy.
*579 The purposes of the YMCA, as set forth in its certificate of incorporation, are (§ 13 B): “The improvement of the moral, spiritual, mental, physical and social condition of young people, primarily men and boys, by the support and maintenance of lectures, sermons, libraries, reading rooms, social meetings and such other means and services as may conduce to the accomplishment of these objects, always appropriate to and in unison with the spirit of the Gospel”.
The YMCA has also recently stated its purposes in an annual dinner program, dated February 8, 1983: “The mission of the YMCA of Greater New York is to provide, effectively and efficiently, services and activities which help people, regardless of age, sex, race or religion, to develop in mind, body and spirit; to recognize and fulfill their responsibilities to each other and to the large community; and to improve the quality of life in New York City and in other parts of the world.”
The Department of Housing Preservation and Development (HPD) has determined that similar housing accommodations at other branches of the YMCA are not subject to rent control under section 2 (subd f, par [2])[5] of the New York City Rent and Eviction Regulations or rent stabilization. As the government agency charged with the responsibility of administration of the rent laws, their determinations in regard to their application are entitled to great weight (see, generally, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). Although HPD did not set forth the specific grounds of exemption under rent stabilization, facilities at the YMCA and YWCA have been traditionally viewed by the courts to be institutions organized and operated exclusively for educational and charitable purposes (Matter of Syracuse Young Men’s Christian Assn., 126 Misc 431; Matter of Rowland, 225 App Div 118). In Matter of Young Womens Christian Assn. of Rochester v Wagner (96 Misc 2d 361, 366), the court, in determining that the facilities and housing accommodations were exempt from real property taxation, characterized the dormitory facilities available to young women as “an act of *580 charity” “in a [time] when the streets of our cities have become playgrounds for crime”. Neither the fact that the YMCA charges fees for membership for use of its housing accommodations (Matter of Rowland, 225 App Div 118, supra), nor does not cater exclusively to the poor (see Matter of Pattberg, 282 App Div 770), or charges fees for room and board (Matter of Young Womens Christian Assn. of Rochester v Wagner, supra; American-Russian Aid Assn. v City of Glen Cove, 41 Misc 2d 622), can strip the YMCA of its essentially charitable character: “Profits do not accrue; the rents received aid the plaintiff in carrying on its beneficial objectives (People ex rel. Young Men’s Assn. v Sayles, 32 App. Div. 197, affd. 157 N.Y. 677 * * *), and the income is not directed to other than charitable purposes, (Matter of Syracuse Y.M.C.A., 126 Misc. 431).” (American-Russian Aid Assn. v City of Glen Cove, supra, p 625.)
Finally, although the Court of Appeals has held in Eaton v New York City Conciliation & Appeals Bd. (56 NY2d 340) that housing accommodations owned or operated by religious institutions are not exempt from rent stabilization, an examination of the stated objectives of the YMCA, as well as the activities it offers, shows it to be primarily charitable rather than religious. In this regard, it should be noted that the Attorney-General has specifically determined that the YMCA is a charitable organization, which must meet the filing requirements of section 172-a of the Executive Law before it can solicit contributions, and is not exempt by reason of being established, operated, supervised, or controlled by or in connection with a religious organization.
Accordingly, this court finds the housing facilities at the YMCA are exempt under section 5 (subd a, par [6]) of the ETPA. Respondent’s motion to dismiss is, therefore, denied. To decide otherwise would be to hamstring the YMCA in its efforts to provide inexpensive temporary lodgings for the benefit of a specific class of individuals, i.e., young, unmarried adult persons. Under rent.stabilization, current tenants would be given the right to demand renewal leases, thus greatly reducing the number of available rental units the YMCA could furnish to those in need *581 of a temporary haven rather than a permanent home. That branch of respondent’s motion seeking pretrial discovery, in the alternative, is also denied inasmuch as respondent seeks items which pertain to the issue of the YMCA’s exempt status, already decided by this court.
Petitioner’s cross motion is decided as follows. Leave to amend the petition to include additional grounds of exemption, under section 5 (subd a, pars [7], [10]) of the ETPA, is denied as academic in light of this court’s determination that the West Side Y is exempt under section 5 (subd a, par [6]). However, that branch of the cross motion which seeks an order directing the payment of use and occupancy is granted. Respondent is to pay petitioner at the rate of $58.10 per week within seven days of service of a copy of this decision and order with notice of entry.
That branch of the cross motion, which seeks to dismiss respondent’s counterclaims is also granted, but only to the extent of severing the second and fifth counterclaims pursuant to CPLR 407. These counterclaims are money damage claims which sound in negligence and intentional tort and should be severed because they are unrelated to the landlord’s claim for possession, and would inordinately delay disposition of this holdover proceeding (Tankoos-Yarmon Hotels v Smith, 58 Misc 2d 1072, citing Great Park Corp. v Goldberger, 41 Misc 2d 988).
This matter is set down for trial on August 10, 1983.

. A class B rental unit is defined “as the more or less temporary abode of individuals * ** * who are lodged with or without meals. This class includes hotels * * * rooming houses, boarding houses * * * and college and school dormitories.” (Administrative Code of City of New York, § D26-1.07, subd 9.) A class A rental unit is one “occupied, as a rule, for permanent residence purposes. This class *** include[s][, inter alla,] tenements *** apartment houses * * * studio apartments” (Administrative Code, § D26-1.07, subd 8 [Housing Maintenance Code]).

. Unqualified exemption was accorded corporations and associations “organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes” (Real Property Tax Law, § 421, subd 1, par [a]). All of the 14 other specified public benefits purposes were accorded only qualified exemption (Real Property Tax Law, § 421, subd 1, par [b]) which could be withdrawn by the local municipality within which the particular real property was located. The City of New York exercised its authority to do so in 1971 by Local Law No. 46 (Local Laws, 1971, No. 46 of City of New York). Section 421 (subd 1, pars [a], [b]) of the Real Property Tax Law has been renumbered sections 420-a and 420-b by chapter 919 of the Laws of 1981.

. Exclusively as used in the context of exemption statutes means principal or primarily (see Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 153). While exemption statutes should be construed strictly against the one seeking the benefit of the exemption, an interpretation so literal and narrow so that it defeats the exemption’s settled purpose is to be avoided (People ex rel. Watch-tower Bible & Tract Soc. v Haring, 8 NY2d 350, 358). By analogy the same standards of construction should apply under section 5 (subd a, par [6]) of the Emergency Tenant Protection Act.

. The statute, as amended by the Omnibus Housing Act of 1983 (L 1983, ch 403, § 55), exempts “housing accommodations owned or operated by a hospital, convent, monastery, asylum, public institution, or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis other than those accommodations occupied by a tenant on the date such housing accommodation is acquired by any such institution, or which are occupied subsequently by a tenant who is not affiliated with such institution at the time of his initial occupancy”.
The amendment only permits housing accommodations occupied by tenants affiliated with a qualifying institution to be exempt from rent stabilization. Here, respondent, as well as any other tenant seeking to reside at the YMCA must become members before taking occupancy, and since they are affiliated with the YMCA, the new amendment does not affect the determination of the YMCA’s exempt status.

. This section exempts “A hospital, convent, monastery, asylum, public institution, or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis.”