Bartlett, Woodward, Hirschberg and Hooker, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.

---

The People of the State of New York ex rel. The Missionary Sisters of the Third Order of St. Francis, Respondent, *v.* John Reilly and Others, Assessors of the Town of Highlands, Orange County, Appellants.    (Nos. 1 and 2.)

*Exemption from taxation — land used for charitable and benevolent purposes by the Missionary Sisters of the Third Order of St. Francis held to be exempt.*

A number of sisters of a voluntary unincorporated religious order organized a corporation known as " Missionary Sisters of the Third Order of St. Francis," pursuant to chapter 316 of the Laws of 1848. The business of the corporation, as set forth in the articles of incorporation, was to "instruct the ignorant, particularly the poor, tend the sick, visit hospitals and prisons when called

72    PEOPLE ex rel. MISSIONARY SISTERS *v.* REILLY.

SECOND DEPARTMENT, JUNE TERM, 1903.    [Vol. 85.

upon to do so; to shelter, guide and instruct orphan children and to do other kindred offices of charity and benevolence as occasion may require."

The corporation conducted a school for children and young women. Pupils who could afford to do so paid a substantial fee for tuition, but others paid no tuition fee. The corporation used all the revenue of the school in its support and maintenance, and the institution was not self-supporting, the deficiency being met by contributions from the unincorporated religious order. Some of the employees of the school were paid a reasonable compensation for the services rendered by them, but, in addition to these, there were twenty sisters of the unincorporated religious order who rendered services without any pecuniary compensation.

The corporation owned two parcels of land, separated by a highway, which had been purchased with money, most of which had been supplied by the unincorporated religious order without security of any kind for its repayment. Upon the larger of these two parcels was situated the school building, and also several other buildings connected with the school. Vegetables and other produce, all of which were used to supply the needs of the school, were grown on this parcel. The parcel was also used as a recreation ground for the exclusive use of the pupils of the school.

The corporation made no use of the smaller parcel except to take lumber therefrom for the purpose of improving the other portions of its grounds.

*Held*, that the larger parcel was exempt from taxation by virtue of the Tax Law (Laws of 1896, chap. 908, § 4, subd. 7, as amd. by Laws of 1897, chap. 371) which provides that." The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women or for religious, bible, tract, charitable, infirmary, educational * * * purposes * * * or for two or more of said purposes and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation;"

That the smaller parcel was not used exclusively for educational purposes or for educational purposes at all, and was, consequently, not exempt from taxation under that statute;

That the evidence did not substantiate the claim, that the main purpose of the corporation was to enable the sisters of the unincorporated association, residing at the school, to lead a passive life of religious meditation, and that the primary purpose of the school was to afford mental relaxation to such sisters by furnishing them with a congenial occupation.

APPEALS by John Reilly and others, assessors of the town of Highlands, Orange county, from an order of the Supreme Court in each proceeding, made at the Orange Special Term and entered in the office of the clerk of the county of Orange on the 5th day of January, 1903, in so far as said orders strike certain property of the relator from the assessment roll of the town of Highlands in the county of Orange.

PEOPLE ex rel. MISSIONARY SISTERS v. REILLY.    73

App. Div.]        Second Department, June Term, 1903.

*William Vanamee*, for the appellants.

*Michael J. Scanlan*, for the respondent.

Per Curiam:

The land which has been exempted from taxation by the decision in these proceedings was formerly known as the Cranston Hotel property, near West Point, and consists of two tracts near Cranston station on the West Shore railroad. The larger tract consists of twenty-two and three hundred and sixty-four one-thousandths acres. The smaller tract, which is separated from the larger by a road running east and west, known as the Landing road, occupies an area of thirteen and eighty-four one-thousandths acres.

As to the larger tract, we think that the orders made at Special Term should be sustained for the reasons given in the report of Mr. Henry Hirschberg, the referee before whom the hearing was had. We are entirely satisfied with his statement of the law bearing upon the case and its application to this part of the property.

As to the smaller thirteen-acre tract, however, which is not only separable but actually separated from that part of the property employed for educational purposes, the evidence shows that the relator makes no use of it except to take lumber therefrom for improving the other portions of the grounds when occasion requires. It seems to us going too far to hold that this part of the property is used exclusively for educational purposes, or indeed that it is used for educational purposes at all.

The orders appealed from should be modified so as to declare the thirteen-acre tract liable to assessment and taxation; but otherwise they are right and should be affirmed.

Present — Bartlett, Woodward, Jenks and Hooker, JJ.

Orders modified so as to declare the thirteen-acre tract liable to assessment and taxation, and as modified affirmed, without costs of this appeal to either party.

The following is the report of the referee:

Henry Hirschberg, Referee:

This is a trial of the issues raised by the respondents' return to a writ of certiorari granted for the purpose of reviewing an assess-

74    PEOPLE ex rel. MISSIONARY SISTERS *v.* REILLY.

SECOND DEPARTMENT, JUNE TERM, 1903.          [Vol. 85.

ment in the sum of $45,000 against relator's real property, situated in the town of Highlands, Orange county. Relator claims that said real property (except a tract of five and twenty-seven one-thousandths acres, hereinafter mentioned) is exempt from taxation by virtue of subdivision 7 of section 4 of chapter 908 of the Laws of 1896, as amended by chapter 371 of the Laws of 1897, being chapter 24 of the General Laws and known as the Tax Law. The grounds alleged by relator for said exemption are that it is a corporation organized exclusively for certain of the purposes mentioned in that law and that it uses the real property in question exclusively for carrying out thereupon said purposes.

The following are the provisions of the law applicable to this case: " The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary (or) educational * * * purposes * * * or for two or more such purposes and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employe thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof, for any such avowed purposes, be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association or for any of its members or employes, or if it be not in good faith organized or conducted exclusively for one or more of such purposes. The real property of any such corporation or association entitled to such exemption held by it exclusively for one or more of such purposes and from which no rents, profits or income are derived, shall be so exempt. * * * The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any

such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion to the extent of the value of such remaining or other portion shall be subject to taxation."

The following are the material facts : Among the various religious communities of the Roman Catholic faith there is a certain voluntary unincorporated religious order of world-wide distribution, known as the Missionary Sisters of the Third Order of St. Francis. In 1870 five sisters of said order, believing that certain charitable, educational and benevolent work could be better effected by the instrumentality of a corporation than by means of said unincorporated religious order, duly incorporated the relator in this State under the corporate name of " Missionary Sisters of the Third Order of St. Francis," pursuant to the provisions of chapter 319 of the Laws of 1848, an act entitled " An act for the incorporation of benevolent, charitable, scientific and missionary societies," and the several acts amendatory thereof.    Relator's objects and business are the same as set forth in its certificate of incorporation, namely, " to instruct the ignorant, particularly the poor ; to tend the sick ; visit hospitals and prisons when called upon to do so ; to shelter, guide and instruct orphan children, and to do other kindred offices of charity and benevolence as occasion may require."

Towards the latter part of 1899 relator purchased the real property in question.    Most of the purchase money was supplied by the unincorporated religious order, but whether as a gift or as a loan to relator does not clearly appear from the evidence.    At any rate, relator did not give said order any security for the repayment of said purchase money and took the real property in question in its own name and free from any incumbrances.

The real property thus purchased by relator consists of about forty and four one-hundredths acres of land and certain buildings thereon, situated in the town of Highlands, on the west shore of the Hudson river.    It is separated into two distinct parcels of land by a strip of land 100 feet in width and 2,070 feet in length owned by the West Shore Railroad Company.

The parcel between the railroad and the river contains about five and twenty-seven one-thousandths acres of land, and as per stipulation on page 107 of testimony its assessable value is $6,000.    Rela-

tor leases that parcel for dock purposes and uses the net income in the support and maintenance of its educational work. It is conceded that said parcel of land is subject to taxation within the authority of *People ex rel. Young Men's Assn.* v. *Sayles* (32 App. Div. 197; affd., 157 N. Y. 677.)

The rest of the real property in question is situated north and west of the railroad, and consists of about thirty-six and three hundred and fourteen one-thousandths acres of land and certain buildings thereon, and its value, as per said stipulation, is the sum of $39,000. Thereupon relator conducts the institution whereby exemption from taxation is claimed for said property.

Said institution is a school for children and young women. It is called "The Academy of Our Lady of Angels," and has existed during the last thirty years. Formerly it was located at Peekskill, but about two years ago it was removed, owing to lack of accommodation for its pupils, to its present location. The curriculum of the school extends from the kindergarten to the academic grade, and, consequently, includes an extensive range of subjects, from reading, writing and arithmetic to the natural sciences, foreign languages, history and philosophy.

Relator advertises the school by various methods, such, for instance, as the insertion of advertisements in newspapers and the publication of a printed prospectus of the school. At present there are eighty-six pupils at the school. Most of them are from places other than Highlands, or its immediate vicinity, and reside at the school during the term. Relator at one time took boarders, but since the summer of 1900 has not done so, and at present there are no boarders other than pupils at the school. Those who are financially able to pay are charged a substantial fee for tuition in the school. That fee varies in amount, according to the financial means of the pupil and according to the course of study selected. The regular rate for the scholastic year is $200, but some pupils are at present attending the school at reduced rates, and some are attending free. Relator uses all the money thus obtained in the support and maintenance of the school. During the school year from September, 1900, to September, 1901, the expenses of the school were $4,000 more than the receipts. Most of that deficiency was met by contributions from the unincorporated religious order. This year the school is doing

better financially, and may soon be self-supporting. Neither relator nor any of its officers or members receive, or are entitled to receive, any pecuniary profit from the relator's operations.

To perform the work of the school, relator employs a chaplain, who is also a professor, at a salary of $1,000 per year; an engineer at $60 per month; night watchman or workman at $35 per month; two men at $20 per month; a messenger boy at $4 per month; three teachers of music, paid by the day's work, at the rate of from $6 to $8 a day, and twenty sisters of the unincorporated religious order, who teach and perform other services without any other compensation than their board and lodging.

It appears that all these employees are necessary for the proper performance of the school work. It cannot be seriously contended that any of them receive more than reasonable compensation for their services. The evidence shows that relator's school is conducted on an unusually economical plan, and that many of its employees, animated by an ideal of duty, are devoting their lives to the performance of its educational work, without receiving or expecting any pecuniary compensation.

On this parcel of thirty-six and three hundred and fourteen one-thousandths acres are situated the school building, four cottages and a barn. The school building is 250 feet in length and 50 feet in width, and contains about 200 rooms. Therein the pupils of relator's school receive their instructions. In addition to room for teaching, it furnishes the pupils and some of the teachers with sleeping and living accommodations. Of the four cottages, one is used as a residence for the chaplain; one is reserved for purposes of quarantine in case of sickness at the school; one is used partly as a dwelling for the engineer and partly as a bowling alley for the pupils of the school, and one is used as a power house and contains dynamos, boilers, etc. The cottages are very small, and, with the exception of the one used by the chaplain, are unheated and useless for living purposes in winter. The barn is used as a dwelling for some of relator's employees, and also for a horse that is used by relator to cultivate the school grounds and to carry pupils and baggage to and from the school. All of these buildings are necessary for carrying out the work of the relator's school.

From this parcel of thirty-six and three hundred and fourteen one-

thousandths acres of land, whereon these buildings are situated, relator obtains vegetables, hay and timber. No part of that produce is sold, but relator directly and necessarily uses all of it to supply the needs of the school. This parcel of land is also used for recreation, and contains a bowling alley, skating pond and swings, reserved for the exclusive use of the pupils at the school.

It should be remembered in applying the law to these facts that in this State the provisions of the Tax Law exempting property from taxation are strictly construed against those claiming the exemption (*People ex rel. Young Men's Assn.* v. *Sayles,* 32 App. Div. 197, 201, and cases there cited; *People ex rel. Delta Kappa Epsilon Society* v. *Lawler,* 74 id. 553, 557, and cases there cited.)

Consequently, to exempt the real property in question from taxation, the burden in this case rests on relator to show itself clearly and unequivocally within the scope and operation of the statute. From the foregoing facts and evidence herein it does thus appear, clearly and conclusively, that relator is a corporation in good faith, exclusively organized and conducted for carrying out some of the purposes mentioned in the statute; that it does not make any pecuniary profit from its operations; that none of its members, officers or employees receive, or are entitled to receive, any pecuniary profit from said operations, except reasonable compensation for services necessarily performed in effecting its educational purposes, and that the school that it conducts upon the real property in question is an educational institution within the meaning of the statute. The mere fact that those who are able to pay are charged a substantial fee for tuition therein does not exclude the institution from the benefit of the statutory exemption, when, as in this case, all the money thus obtained is used in the support and maintenance of the institution. (*Collins* v. *New York Post Graduate Medical School,* 59 App. Div. 63, 68; *People ex rel. New York Hospital* v. *Purdy,* 58 Hun, 386; affd., 126 N. Y. 679.)

The principal question of law to be determined herein is whether or not relator uses the real property in question exclusively for carrying out thereupon the educational purposes. The statute provides that only the property exclusively used for carrying out thereupon the educational purposes shall be exempt from taxation, and expressly excludes from the benefit of the exemption any property "leased or

PEOPLE ex rel. MISSIONARY SISTERS *v.* REILLY.    79

App. Div.]        Second Department, June Term, 1903.

otherwise used for other purposes." (Laws of 1896, chap. 908, § 4, subd. 7.*) Although, as has already been said, this statute must be strictly construed against those claiming the exemption, nevertheless a strict construction does not mean such a literal interpretation as would defeat or nullify the intention of the Legislature. The exemption is a recognition by the Legislature of the advantage accruing to the State from the dissemination of knowledge within its limits rather than a mere gift prompted by an undiscriminating generosity, and manifests a legislative policy to encourage the increase, growth and development of institutions of learning within the State. The rooms wherein the labor of teaching is performed are seldom more necessary for the successful maintenance of an educational institution than are the grounds that provide food for the institution's table, recreation for its pupils, and light, air and access to its building. To exempt only the former would in many instances annul the statutory intention of fostering institutions of learning within the State. The rule is that property owned by an educational institution is held and used exclusively for educational purposes, within the meaning of the statute, whenever it is directly and necessarily used in the support and maintenance of the institution and its educational purposes. (*People ex rel. Blackburn* v. *Barton*, 63 App. Div. 581; *People ex rel. Academy of the Sacred Heart* v. *Commissioners of Taxes*, 6 Hun, 109; affd., 64 N. Y. 656; *People ex rel. Seminary of Our Lady of Angels* v. *Barber*, 42 Hun, 27; affd., 106 N. Y. 669.)

The case of *People ex rel. Blackburn* v. *Barton* (*supra*) was decided under the present statute. In that case it appeared that the relator, an association within the purview of the statute, owned four hundred and sixty-seven acres of land in the county of Cattaraugus, whereon it conducted a school for the education of certain Indians. On that land were a large building wherein the pupils and teachers lived, a schoolhouse, a barn, and " the usual outbuildings connected with a farm." The relator raised crops on eighty acres of the land, pastured stock on a number of acres and used fifty acres as a wood lot and also for the pasturage of cattle. The rest of the land was not used for any purposes. All the crops and produce were used in the support and maintenance of the school. As there was more than enough to

* Amd. by Laws of 1897, chap. 371. — [Rep.

80   PEOPLE ex rel. MISSIONARY SISTERS *v.* REILLY.

SECOND DEPARTMENT, JUNE TERM, 1903.        [Vol. 85.

supply the needs of the school, the surplus was sold and the money obtained used in the support and maintenance of the school. The court exempted from taxation all the buildings and the land whereon the crops were raised and the cattle and stock pastured. It said (p. 583): "In determining whether property is used for the purposes of an institution of this kind so as to exempt it from taxation, it must be made to appear that the use is necessary or fairly incidental to the maintenance of the institution for the carrying out of the purposes for which it was organized. It is not necessary that every particle of the real estate should be devoted to the location of the buildings and the laying out of the grounds of the institution, but, so far as the land is used for the raising of supplies for the inmates, to that extent the institution may claim exemption from taxation."

In *People ex rel. Academy of the Sacred Heart* v. *Commissioners of Taxes* (*supra*) the court exempted from taxation thirty-six acres of land used by the pupils of the relator's school for recreation, and also eight acres whereon vegetables were raised for the school.

In *People ex rel. Seminary of Our Lady of Angels* v. *Barber* (*supra*) the court exempted from taxation a number of acres of land that supplied hay, grain and vegetables for the use of relator's college. It also exempted " a chapel and other buildings occupied as tailor shop, for repairing the clothes of the professors and pupils, a shop for repairing their shoes, a music and bandroom, and some sleeping rooms, a laundry, a wood house and bake shop, a carpenter shop, a machine shop, a printing office, a gas house, a boiler room, and some dwellings." These buildings were exempted because they were " occupied, used and the business carried for on the benefit and purposes of the institution, and the teachers and students of the college " (p. 30).

It is true that these two latter cases were not decided under the present statute, but the difference between the present statute and the one in force when those cases were decided does not manifest a legislative intention to change the principle of construction and application enunciated in those cases. They may, at any rate, as was said in *People ex rel. Blackburn* v. *Barton* (*supra*, 584), " be properly referred to * * * to illustrate the extent to which the exemption will be permitted to go."

PEOPLE ex rel. MISSIONARY SISTERS v. REILLY.    81

App. Div.]        Second Department, June Term, 1903.

These views are not contrary to the principles enunciated in *People ex rel. Young Men's Assn.* v. *Sayles* (32 App. Div. 197), or in the recent case of *People ex rel. Delta Kappa Epsilon Society* v. *Lawler* (74 id. 553). Those cases are easily distinguishable. In the former, the property taxed was not used directly in the support and maintenance of relator's institution, but was leased, contrary to the express provisions of the statute, and the profits used in the support and maintenance of said institution. In the latter case the property was only incidentally used for purposes within the purview of the statute and primarily used for other purposes. In that case the court went so far as to say (p. 557) : "We ought not, perhaps, to give to the word 'exclusively' an interpretation so literal as to prevent an occasional use of the relator's property for some purpose other than one or more of those specified."

Now, in the case at bar, it clearly appears from the evidence that all of the parcel of thirty-six and three hundred and fourteen one-thousandths acres of land, and all the buildings thereon, are devoted to educational uses or to uses fairly incidental to the carrying out of relator's educational purposes, and directly and necessarily held and used by relator exclusively in the support and maintenance of its educational purposes. The fact that a highway crosses that parcel of land is not material. *(People ex rel. St. John's College* v. *Commissioners of Taxes*, 10 Hun, 246.)

But respondents claim that relator's school is not in good faith conducted exclusively for educational purposes, but that, on the contrary, it is partly conducted for certain other purposes of the unincorporated religious order that are without the purview of the statute. To support that contention, it is asserted that the sisters of said order, leading a passive life of religious meditation and requiring some congenial occupation to afford mental relaxation during the performance of their lifelong religious vows, conduct relator's school for the primary purpose of obtaining such occupation and relaxation and therein subordinate the educational purposes to the religious purposes of said order ; that it is not the intention of the Legislature or the policy of the State to exempt from the public burden of taxation property devoted to religious meditation and reflection, but that the religious purposes mentioned in the statute only include public wor-

ship and such like religious uses as are a source of. strength to the body politic.. The learned counsel for respondents argues that could private piety obtain exemption from public taxation, then an altar would be erected in every household and prayers daily ascend from every home.

This ingenious and novel claim is not substantiated by the facts in this case.   Although it is true that relator was incorporated under the name borne by the unincorporated religious order, and although its members, officers and many of its employees are members of said order, nevertheless ·it conclusively appears from the evidence that the two now are, and always. have been, distinct, separate and mutually independent organizations.   It also appears that relator ; was in good faith exclusively organized for the performance of certain purposes within. the purview of the statute, and .that it exclusively uses the property in question for educational purposes.   .So, too, practically all the time of those sisters of the unincorporated religious order, who are engaged in performing relator's educational work, is devoted to the performance of that work.   The fact that. as individuals they also recognize and perform certain religious duties cannot have any bearing on the issues involved in this case. The question whether or not passive private religious uses are included within the purview of the statute, while an interesting one, need · not be determined here, inasmuch as relator's claim to exemption is based on educational and not religious uses.   Nor it may be said could any family by merely conducting religious exercises in the home raise a question regarding its right to the exemption conferred by the statute, without first becoming a corporation or association organized exclusively for the performance of those religious exercises.

The parcel of land owned by relator lying east of lands of the West Shore railroad and containing about five and twenty-seven one-thousandths acres, is subject to assessment and taxation, and the fair assessable value thereof is $6,000.

The assessment upon the remainder of relator's property is illegal and unauthorized and should be vacated, with costs of this proceeding to the relator.