THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE TRUSTEES OF THE SAILORS' SNUG HARBOR IN THE CITY OF NEW YORK, Relator, *v.* WILLIAM STANLEY MILLER and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.

Supreme Court, Special Term, New York County, August 2, 1938.

*Hawkins, Delafield & Longfellow* [*Cornelius O'Donahue* and *John C. Howes* of counsel], for the relator.

*William A. Chanler, Corporation Counsel* [*Hyman W. Kehl* of counsel], for the respondents.

McLAUGHLIN (CHARLES B.), J. The relator has commenced this proceeding to declare the assessment placed upon a portion of its property to be illegal on the ground that it is part of its institutional property and, therefore, exempt from taxation. The matter was referred to a referee, who has reported in favor of the relator. The matter is now before this court on a motion to confirm the referee's report.

This institution has been in existence for many years. In 1801 one Robert Richard Randall died ₁eaving a last will and testament which was admitted ʋo probate in the county of New York on July 10, 1801. The testator devised his residuary estate to certain named trustees for the purpose of erecting and building an asylum for a marine hospital which was to be called the Sailors' Snug Harbor, and which was to maintain and support aged sailors. By certain acts the Legislature finally in 1828* gave to the trustees of Sailors' Snug Harbor due authority to regulate and improve the land devised to them by said Randall, and were authorized to " purchase a suitable and convenient tract of ground, lying upon the island of New-York, or adjacent thereto, and fronting upon the North or East River, or in the vicinity thereof." The trustees determined upon the present plot and that determination was approved of by the Court of Chancery in 1831. One of the reasons given in the petition was that this was water-front property and afforded the sailors an unobstructed view of the " Bay and Harbor of the City of New York."

Only one contention is raised on this motion. It is not disputed that every fact requiring exemption is present except that the portion of the relator's property which is taxed is unnecessary for its corporate purposes and is not used sufficiently by it to warrant an exemption. The respondent claims that there are approximately 3,500,000 square feet exempt from taxation which is an amount sufficient to care for the 850 sailors who are in this institution. They have, therefore, taxed the remaining 486,325 square feet. This latter property is partly land under water and partly upland and is physically separated from the remaining property by a street designated as Richmond terrace. The respondents argue that the city of New York is making a sufficient contribution to this institution when it exempts a part most used. There is no legal force to the contention made. Whatever moral force it might have had at another time or place is completely destroyed by the comparison of the amount of possible taxes to the amount expended by the relator in conducting this home for sailors. The ratio is over ten to one as the taxes would be about $40,000 while the expenses of caring for these sailors amount to approximately $420,000.

This court finds that the relator has sustained the burden of establishing that the property is exempt. The fact that Richmond terrace cuts through the property of the relator, and that part of the property is traversed by a railroad operating pursuant to

* See Laws of 1828, chap. 276.

a right of way granted to it, does not affect the question of exemption from taxation. (*People ex rel. St. John's College* v. *Commissioners of Taxes*, 10 Hun, 246, 247; *People ex rel. Female Academy of Sacred Heart* v. *Commissioners of Taxes*, 6 id. 109; affd., 64 N. Y. 656.)

Reason must govern the application of legal principles even where the rule of *strictissimi juris* applies as it does in cases of exemptions from taxation. This property must be considered as a single unit. The water front, while not used as freely as the remaining property, is still a definite and essential part of the whole. That it may not be absolutely necessary to the successful conduct of the institution is not sufficient reason to deny an exemption as to any portion of the whole. (*Congregation Emanu-El* v. *City of New York*, 150 Misc. 657; affd., 243 App. Div. 692.) The entire property in the ownership of the relator is the result of the mandate of the Legislature in 1828 requiring such a piece of property with frontage on the water.

The approval by the Chancery Court of the site in question for the erection of Sailors' Snug Harbor was based upon the representation in the petition presented to the court, that it was a waterfront tract which would afford to the sailors an unobstructed view of the harbor and would have all the advantages of property facing on the water. It is clear, therefore, that this portion of the property which the city claims should not be exempt is an integral and essential part of the whole institution. Relator has kept and maintained this property for many years as a whole and the water front has been and always will be the basic idea of the whole, resulting no doubt, from the character of the institution as a home for indigent, old and decrepit sailors. A complete use of the relator's property in obedience to the will of the Legislature, and the clear intendment of the order in the Court of Chancery, demand a water front as part of this institution.

A review of the evidence in this case satisfies the court that the use of this frontage property is had in good faith and in order to carry out the purposes for which the relator was formed. There is no guile or bad faith nor is there any claim of profit directly or indirectly to the relator or any one connected with its management. It is impossible to separate the frontage land from the remainder of the property and have the institution as contemplated by the Legislature, as approved by the Court of Chancery, as exempted from taxation by this court in 1901 and as conducted by the trustees for many decades.

It appears that in 1901 the question of the relator's right to exemption of all its property with the exception of lots 60, 66 and

85 in block 68 was before this court. Issue was joined and the final order in that certiorari proceeding adjudicated that such property was exempt from taxation. The relator does not urge this decision as a bar although there is evidence in the present case to show that there were no changed circumstances between that date and the present time. The court, however, has not considered this judgment in arriving at its determination of the present motion.

The report of the referee is, therefore, confirmed. His findings of fact and conclusions of law are adopted. Settle final order.