Edward M. O ’Gorman, J.
Since 1957, and continuing through the y'ear 1970, the petitioner’s property had been carried on the tax rolls of the Town of New Castle as exempt property. As part of a reassessment program commenced in 1968, the property was reclassified on June 11, 1970. Petitioner appeals from a determination of the Board of Review of the township denying petitioner exemption for the year 1971, on the ground that petitioner’s property is not being used “exclusively” for carrying out a corporate purpose embraced within the provisions of section 420 of the Real Property Tax Law.
The pertinent provisions of this law follow: “ 1. Real property owned by a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, medical society, library, patriotic, historical or cemetery purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section. ’ ’
Petitioner’s objectives, as stated in its charter (pars. 2[a], [b]), may be summarized as follows: to acquire areas of land and to operate them as preserves for the maintenance of wildlife and its natural habitat, and to provide an opportunity for study of the various types of flora and fauna that are indigenous to the respective areas.
Paragraph 11 provides as follows: “11. This corporation is organized and shall be operated exclusively for charitable, educational and scientific purposes and no part of its earnings, if any, shall inure to the benefit of any officer, member or employee of the corporation or to the benefit of any individual; and no officer, member or employee of the corporation and no individual shall receive or be entitled to receive any pecuniary profits from the corporation except reasonable compensation for services.”
Paragraph 12 limits the disposition of any preserve lands to a similar corporation or governmental agency.
The witness Perkins, president of petitioner, by his testimony established himself as an expert in the field of ecology and the *613 conservation of natural resources, with some 16 years’ experience in the field of conservation with petitioner and similar corporations. According to his testimony, it is the corporation’s method of operation to select, after careful investigation, those areas which are important in terms of conservation and have natural characteristics which ideally suit them as habitats for special types of wildlife; that at the present time the corporation manages some 20 wildlife projects which involve approximately 7,000 acres of land, including the preserve referred to herein as the “ Marsh Sanctuary ” containing some 17 acres, which was acquired in 1957.
According to the witness Perkins, this sanctuary and the types of habitat contained therein accommodate a wide variety of mammals, amphibians, reptiles and water birds, and approximately 40 bird species not found in many other areas, including a few species fast becoming extinct.
The foregoing evidence satisfies the court that the corporate purposes of the petitioner are educational, scientific, and have in mind the mental and moral improvement of men and women as those terms are used in section 420 of the Real Property Tax Law. (See Matter of North Manursing Wildlife Sanctuary v. City of Rye, 28 A D 2d 891.)
I find further that the corporation is a nonprofit corporation.
There remains the issue as to whether or not, on the taxable status date of June 11,1970, the corporation was in fact carrying out “exclusively” on that portion of its premises located in the Town of New Castle those of its corporate objectives which would qualify it for tax exemption.
At the threshold of this inquiry, it should be observed that the amount of construction of facilities, equipment and specialized activity required to show use, will vary substantially from one exempt purpose to another. The activities conducted by this corporation in this sanctuary during the year 1970 must be measured with this observation in view.
It would seem apparent that the principal elements in a wildlife sanctuary are the natural habitat and the wildlife that it attracts, and that the principal activities which make these features available for maximum use are those which preserve the habitat as nearly as possible in its natural state, and protect the wildlife from the depredation of the indiscriminate hunter and the vandal. Suitable trails giving access to all the areas of the sanctuary would undoubtedly assist those availing themselves of its use. Unduly elaborate trails, on the other hand, *614 might well prove self-defeating, by changing the character of the habitat.
The testimony in this hearing has made it clear that the nature and variety of the species of wildlife and the flora and fauna contained in this wildlife preserve are unusual, and that the material gathered in this area is of prime educational and scientific value to those who would seek to study nature in this place; that here there are to be found rare species of reptile and amphibian; many unusual water birds, including herons and rails; and the Muhlenberg turtle, which is fast becoming extinct and may now possibly only be found in the Marsh Sanctuary. This has been attested to by the witnesses Perkins, trained as an ecologist; George, a professional zoologist and renowned writer of natural history stories; the naturalist Grierson and the science teacher Ormiston, in addition to many others who use the sanctuary. It was their testimony that they had conducted their own studies therein and had led study groups into the sanctuary for that purpose.
I am satisfied from the foregoing that the Marsh Sanctuary is a storehouse of scientific and educational material and, based on the testimony, that this area, since 1957, has been posted to keep out marauders; that trails have been established to facilitate travel through the sanctuary; that signs have been posted identifying the sanctuary and welcoming the visitor; that funds have been expended on affixing identification markers to trees and shrubbery and on feeding certain wildlife. I find that over the years there has been considerable activity conducted by this corporation and committees under its supervision designed to bring the advantages of the sanctuary to the attention of schools, colleges such as Rutgers, Tale, Columbia and others, which in fact made subsequent use of the facilities, and other groups, and that over the years groups of scouts, nature lovers, Audubon Society members, school groups and adult education groups have either been brought through the sanctuary or had the materials gathered there called to their attention in the form of lectures or written articles, and that this activity was of a level to sustain any burden which may be cast on the owner of the premises above and beyond the preservation of the area as a sanctuary.
I do not construe the term “exclusive” in this statute to require constant activity or vigorous or obvious activity to be performed on the premises. I rather construe the term as requiring that these premises be devoted to no other use than that which earns the exemption, to wit: in this case, a wildlife sanctuary, and I find that at no time has there been any attempt to use this property as other than a wildlife sanctuary.
*615 This brings us to the final question: Did the petitioner abandon the use of these premises as such sanctuary during the year 1970?
Witnesses for the petitioner conceded that the activity of the lay committee which largely assumed the burden of maintenance of trails and signs and the conduct of tours through the sanctuary was largely curtailed during the year 1970 because of the illness of a key committee chairman, and the unavailability during the year of several key members of the management committee. However, the testimony indicates the efforts made to continue the activities of this corporation on these premises as vigorously as the circumstances permitted, and the record is replete with testimony that educational and scientific use was made of this particular sanctuary during the year 1970. The testimony further indicated that considerable energy was required to combat the damage to signs and trails caused by vandals, and that the signs had to be replaced frequently. Indeed, the only testimony to the contrary is the testimony of the assessor Scopelliti, who testified that during the year 1970 he made one visit to the sanctuary in April and one in May; that based on these two visits, he found that many of the trails were overgrown, and he was unable to find signs in the area which he visited indicating that this was a sanctuary being operated as a going concern and available for use by the public; that on his two visits he did not witness any activities being carried on on the premises.
I have no reason to doubt this testimony, but no reasonable view of the requirement placed on this property would require it to conduct any particular activity on any given day and hour in order to qualify for tax exemption. There has been activity during the year testified to in the record of the hearing. There is also testimony which tends to explain the fluctuation in the activity of the corporation during the year in question. In my opinion, there was no diminution in the effort to continue the habitat in its natural state, and no evidence that the animal and bird life in the sanctuary was in any way different during the year in question, or that any steps were taken during that year to diminish the right of the public to derive educational and scientific benefits afforded by the sanctuary.
In my opinion, the petitioner is entitled to tax exemption on those acres of its wildlife preserve which are located in the Town of New Castle, so that petitioner may continue to provide shelter for the herons and rails, and to provide quiet trails on which the Muhlenberg turtle can crawl in pleasant surroundings, free from the fear of the driver’s wheel or the scrape of the *616 ’dozer’s blade. Expert witnesses to the contrary notwithstanding, he may not become extinct quite so soon, at least if we give him a chance to survive.
With respect to the 2.8-acre parcel of the preserve, herein described as lying on the southerly side of Byram Lake Road, it would seem that such property is entitled to exemption, although not in actual use by reason of the absence of suitable improvements thereon, if the construction of such improvements is in good faith contemplated by such corporation (Real Property Tax Law, § 420, subd. 3). In view of the testimony herein as to the intention of Wildlife Preserves Incorporated to hold the land as a buffer, and subsequently incorporate other lands with this perimeter holding and ultimately construct thereon administration facilities and a parking area, the right to exemption at the present time extends to this buffer parcel as well. However, if the buffer area is not enlarged, then it will be incumbent upon petitioner to file with the Town Board detailed plans of such structures as it intends to create on this parcel.