OPINION OF THE COURT
John J. Conway, J.
This review of a tax assessment comes before the court on a motion by the petitioner to confirm the report of the referee, Donald J. Mark, which found petitioner’s entire residence facility exempt under section 421 (subd 1, par [a]) of the Real Property Tax Law. Originally the matter was brought under article 7 of the Real Property Tax Law to review assessments of petitioner’s real property and then was referred to the *363 referee, to hear and report, and proceedings consolidated so that assessments for the tax years 1971-1975 were under review.
A review of the facts concerning the residence facility and its proposed taxation is in order. The Young Womens Christian Association of Rochester and Monroe County (hereinafter referred to as YWCA) is the owner of real property including a building located at 175 Clinton Avenue North in downtown Rochester. The respondents seek to tax only the residential portion of the building consisting of the fourth, fifth and sixth floors. Those floors have 120 rooms containing 133 beds which are maintained as a residential facility for the avowed purpose of "providing a place for a young woman to achieve independence during a transition from home, or another place, or lifestyle into society, and to provide a special atmosphere in which this transition can occur.” In fulfillment of this goal the YWCA employs a residential staff of two persons who are available for counseling the women residents in handling their emotional or financial problems. Residents are classified as either long term, residents staying in excess of three months, short term, residents staying from one to three months, and transient, those staying for shorter periods. Permanence of residence is encouraged by rental rates which favor longer term residents.
Commencing with the year 1971 there has been a dramatic decrease in the occupancy rate at the residence facility. In response to the increased vacancy, in May, 1972 through the date of the trial before the referee, the fifth floor was closed off, although the rooms were available should they have been needed. It is this increased vacancy, as well as the claim that the residence facilities are no longer operated in keeping with the statutory exemption, that is relied on by respondent for the revocation of the tax exemption previously extended to the residence.
Because the referee’s report is only advisory (CPLR 4403) and since respondent argues that the referee misconstrued the issues and that his findings were contrary to law, the court finds it necessary to elaborate on the legal issues involved.
Respondent has advanced two separate legal arguments for the propositen that the YWCA has forfeited its tax exemption. The first would require a total loss of tax exemption for the residences, while the other would require only a partial loss. The court will treat the two legal arguments separately.
*364 It is respondents’ main contention that the residence facilities have lost their tax exemption under section 421 of the Real Property Tax Law because they are operated no differently than a cheap motel or hotel. The pertinent part of section 421 (subd 1, par [a]) reads as follows: "Real property owned by a[n] * * * association organized or conducted exclusively for religious, charitable * * * educational, moral or mental improvement of * * * women * * * purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * by the owning * * * association as hereinafter provided shall be exempt from taxation as provided in this section.”
A three-prong test for tax exemption must be satisfied by the nonprofit organization. (Matter of New York Cardiac Center v Kondzielaski, 46 AD2d 810; and Matter of Genesee Hosp. v Wagner, 47 AD2d 37.)
(1) The owner is organized or conducted exclusively for one or more of the purposes specified in the statute.
(2) That the property itself is used exclusively for one or more of those purposes.
(3) That no pecuniary profit inures to any of the organization’s officers, members or employees, and that the property is not used as a guise for profit-making operations.
The only issue that has arisen on this point is whether the YWCA has met the second test, that of exclusive, actual use for an exempt purpose. Respondent does not contest whether the YWCA is organized for an exempt purpose (original charter purposes, never amended, states: "That the business and object of such association shall be to promote the temporal, social, mental and moral and religious welfare of women, especially the young, who are dependent upon their own exertions for support”) nor do they contend that the YWCA makes any profit whatsoever.
Thus delineating the precise issue review of how the courts have applied the esclusive use test is appropriate. Initially it should be noted that while exemption statutes should be construed strictly against the taxpayer seeking the benefit of exemption, an interpretation so literal and narrow that it defeats the exemption’s settled purpose is to be avoided. (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 153; and People ex rel. Watchtower Bible & Tract Soc. v Haring, 8 NY2d 350, 358.) Therefore, this court should keep in mind, as did the court in Matter of *365 Chautaugua Inst. v Town of Chautaugua (35 AD2d 1, 6), the philosophical note in Walz v Tax Comm. (397 US 664, 687, 688), that "these organizations are exempted because they, among a range of other private, nonprofit organizations contribute to the well-being of the community in a variety of nonreligious ways, and thereby bear burdens that would otherwise either have to be met by general taxation, or be left undone, to the detriment of the community.”
As to meaning to be given the phrase "used exclusively” in making a determination under the second test, numerous courts have held that it connotes "principal” or "primary” use, so that a merely incidental use of the property for other than exempt purposes will not destroy the exemption. (Matter of Genesee Hosp. v Wagner, 47 AD2d 37, supra; Matter of Association of Bar of City of N. Y. v Lewisohn, supra; People ex rel. Watchtower Bible & Tract Soc. v Haring, supra; also Presbyterian Residence Center Corp. v Wagner, Supreme Ct, Monroe County, Oct. 29, 1977; see, also, 58 NY Jur, Taxation § 133.)
The remaining discussion must concentrate on the question of whether the use of the YWCA dormitory constitutes a use primarily in furtherance of the corporate purpose, which is unquestionably a purpose within the purview of section 421 (subd 1, par [a]).
As already stated, the purpose clause of the YWCA has as one of its objectives, the promotion of the mental and moral welfare of women, especially the young. It is no accident that section 421 (subd 1, par [a]) has as one of its qualifying purposes, the "moral or mental improvement of men [or], women”. The State Board of Equalization and Assessment has stated: "The term 'moral or mental improvement of men or women’ was taken directly from the YMCA purpose clause, and it was clearly the intent of the Legislature (L.1893, c.498) to include that organization within the exemption statute. We believe that organizations such as the YMCA are distinguished by their combination of benevolent, religious and charitable aspects. It is this type of organization to which the term 'moral or mental improvement of men, women or children’ was meant to apply” (5 Opns of Counsel of St Bd of Equal & Assess No. 17, p —).
Nevertheless, the YWCA still has the burden of demonstrating that in the years in question it was functioning in fulfillment of that purpose. The referee’s findings of fact and *366 conclusion of law, supported by the proof adduced at the hearing, establish that the YWCA has been operating in fulfillment of their purposes and those of section 421 (subd 1, par [a]). The court concurs with the findings and conclusions reached by the referee. Granted, their chore has become markedly more difficult and the staff at the YWCA is not able to establish meaningful contacts with every girl who passes through its halls. Too few residents avail themselves of the programs and opportunities provided by the YWCA. Many of the women face serious emotional adjustment problems, but this indicates a need to have the YWCA continue in its effort. The test for determining whether the YWCA’s dormitory is used exclusively for an exempt purpose is not its rate of success in improving the lives of these women, any more than the penitence of sinners is the test for a church or synagogue. While the court would hope for increased interaction at the YWCA between the residents and the programs and staff, instances of failure do not call for a loss of tax exemption.
The court regards very highly the fact that the YWCA is a place where women, particularly the young, can go in a time of personal crisis and find secure but low cost housing, as well as a staff willing to discuss their problems. The respondent has made much of the problem of petty thefts at the YWCA and concludes that the YWCA has a rampant crime problem. This is a gross exaggeration of the problem the YWCA has faced with petty thefts from a sixth floor refrigerator and isolated occurences of thefts of personal property. It is not an abnormal situation considering the number of women living together. The fact that the YWCA provides security and personal safety for the residents, as compared to that which they could hope for at low cost hotels in the vicinity cannot be questioned. This alone, in a period when the streets of our cities have become playgrounds for crime, constitutes an act of charity on behalf of the YWCA and which promotes the mental and moral welfare of the women residents.
As an alternative argument the respondent urges that even should the court find for petitioner on the question of whether the dormitory has been used exclusively for an exempt purpose as stated in section 421 (subd 1, par [a]) of the Real Property Tax Law, nonetheless there should be a pro rata loss of exemption resulting from the closing off of the fifth floor. Respondent pins his contention on the express language of section 421 (subd 1, par [a]), which requires that a *367 corporation or association, to qualify its real property for exemption, must use it exclusively for one of the specific purposes. Respondent argues for a most exacting and literal interpretation of the word "use”, that where a portion of a building, once devoted to one of the exempt purposes, is temporarily shut off from use, there is a pro rata forfeiture of exemption.
It is resopndent’s added contention that section 421 (subd 3, par [a]) and the case law do not provide petitioner with an exception under the circumstances. That subsection states: "[R]eal property from which no revenue is derived shall be exempt though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon if * * * the construction of such buildings or improvements is in progress or is in good faith contemplated by such corporation or association”. Respondent argues that there has been no such showing as to the projected use of the fifth floor beyond the fact that it is available for occupancy. He is correct in his assertion that such a bare bones showing does not suffice to satisfy section 421 (subd 3, par [a]), but that subsection is clearly not meant to contemplate the situation as it exists at the YWCA. It would require a convoluted reading of the subsection to apply it here so as to require the YWCA to make a good faith showing as to the planned use of the fifth floor, and the case law substantiates this. (See Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey, 35 AD2d 161; Matter of Wildlife Preserves v Scopelliti, 66 Misc 2d 611; Matter of North Manursing Wildlife Sanctuary v City of Rye, 28 AD2d 891; Ann. 54 ALR3d 9, Prospective Use for Tax-Exempt Purposes as Entitling Property to Tax Exemption; 4 Opns of Counsel of St Bd of Equal & Assess No. 22 [vacant or open land].)
Ordinarily the plans call for the construction of a building. Subdivision 3 of section 421 is not addressed to the situation as exists here, where the building is fully completed, has been in use for many years, and now due to a fall off in occupancy, a floor is vacated. Respondent evidently confuses vacant land with vacancies in a building. (See Pinelawn Cemetery v Cesare, 90 Misc 2d 736; People ex rel. Blackburn v Barton, 63 App Div 581; People ex rel. Missionary Sisters of Third Order of St. Francis v Reilly, 85 App Div 71; and Young Women’s Christian Assn. of City of N. Y. v City of New York, 217 App Div 406, all of which indicate that the thrust of the case law is *368 that vacant land is not exempt.) Under these facts petitioner is not required to show good faith, exact plans for the future use of the fifth floor in order to avoid a pro rata loss of exemption.
Neither is this a case where part of the building or property has been used for a nonexempt purpose, such as the production of income. "[T]o the extent that non-exempt uses do occur on the premises and where they cannot be said to be merely incidental purposes’ an allocation or partial exemption is mandated”. (Matter of Genesee Hosp. v Wagner, 47 AD2d 37, 44, supra; and Matter of Chautaugua Inst. v Town of Chautaugua, 35 AD2d 1, supra.)
The precise situation presented is the vacancy of an entire floor occasioned by a severe drop in occupancy at the residence. The closing of the fifth floor was an administrative measure taken to consolidate the use of the residence when a sharp decline in occupancy occurred. The case law involving just such a situation is sparse, probably attributable to the fact that rarely do assessors keep abreast of occupancy rates and use vacancy as a justification for loss of exemption. The two cases most closely in point are Congregation Emanu-el of City of N. Y. v City of New York (150 Misc 657, affd 243 App Div 692); and People ex rel. Trustees of Sailors’ Snug Harbor in City of N. Y. v Miller (169 Misc 19), wherein tax assessors sought a pro rata loss of exemption on the grounds that available space was not being fully utilized.
In Congregation Emanu-el, the city argued for an interpretation of the phrase "used exclusively” that would require total use of the premises to get the full exemption. To that the court responded (pp 659-660):
"The phrase has reference not to the space occupied but the use to which the property, as a whole, is put or made available. If a portion of the property actually be used for one or more of the purposes of the incorporation’ * * * and the remainder be temporarily unoccupied, the building, as a whole, is used exclusively for carrying out thereupon one or more of such purposes’ * * *
"A church or synagogue or school [one might add here a YWCA] does not shed its exempt character during the summer because of idleness. Constant daily use is not contemplated or compelled. When used, the use must be for the purpose which the law recognizes as earning exemption. The *369 property here was available for, and susceptible to, use for plaintiff’s purposes; potentially, if not actually, it was in use.
"Were the upper floors utilized for the storage of the plaintiff’s files or books, or otherwise ostensibly availed of, such application would meet the city’s objection. Yet, it would encourage subterfuges and stratagems and convert the law into a farce to compel pretended use merely to escape the extreme construction urged by the city.”
In accord is the more recent case of Wildlife Preserves v Scopelliti (66 Misc 2d 611, 614, supra) where in reference to a game preserve the court stated: "I do not construe the term 'exclusive’ in this statute to require constant activity or vigorous or obvious activity to be performed on the premises. I rather construe the term as requiring that these premises be devoted to no other use than that which earns the exemption”.
Petitioners should not be penalized by a forfeiture of part of their exemption for their act of good business sense in temporarily closing off an entire floor. Such a penalty would in effect state a preference for vacancies which are scattered throughout all the floors, over a move designed to consolidate them.
This court, as did the court in Congregation Emanu-el (supra), perceives a very real factual distinction presented in cases such as People ex rel. Blackburn (supra) and People ex rel. Missionary Sisters of Third Order (supra), as against that which exists here. In those cases there was not only a nonuse of the land, but the land itself was unimproved and as of the tax status date there was no actual operation going on. Here there is an ongoing operation, the land is both used and improved, though not operating at full capacity. In the former situation there is a very serious removal of potentially valuable land from the tax rolls; the very situation at which section 421 of the Real Property Tax Law was designed to strike. (L 1971, ch 414, § 1, Legislative findings and intent; Real Property Tax Law, § 421, eff Jan. 1, 1972.)
The trend of the statutory exemption law has been to restrict real property tax exemptions and the Court of Appeals has pointed out that in pursuance of this manifest intent of recent legislation, tax exemptions should be strictly construed against the taxpayer.
Nonetheless, "Reason must govern the application of legal principles even where the rule of strictissimi juris applies as it does in cases of exemption from taxation.” (People ex rel. *370 Trustees of Sailors’ Snug Harbor in City of N. Y. v Miller, 169 Misc 19, 21, supra.)
A pertinent analogy may be instructive on this point. What the respondent proposes is analogous to holding that a church which loses parishioners due to cynical times should lose its exemption pro rata according to the number of empty pews. Even should the church, as a matter of convenience, close off the back pews, no municipality would be permitted to tax the church property pro rata.
It is the court’s opinion that between the years 1971-1975, the YWCA continued to use its dormitory facility exclusively for charitable, religious and educational purposes and for the moral and mental improvement of women in that it has been used to provide secure, low cost housing to women in need of such a facility and additionally offered to those women the chance to discuss their problems and receive counseling from the staff. Therefore, satisfied that petitioner has met the requirement of showing exclusive use of the premises for an exempt purpose under section 421 (subd 1, par [a]) of the Real Property Tax Law, the conclusion necessarily is that the residence facilities are fully tax exempt and petitioner is entitled to judgment.
Accordingly, the report of the referee, Honorable Donald J. Mark, is confirmed and the assessor instructed to remove the YWCA dormitory facility from the tax rolls for the years 1971-1975.