OPINION OF THE COURT
James H. Shaw, Jr., J.
Plaintiffs, concededly tax exempt religious and educational corporations, move for summary judgment to cancel as tax liens, the taxes assessed against premises 567 Ocean Parkway, Brooklyn (567 Building), owned by plaintiff Religious Education Association (Association) for the tax years 1975/1976, 1977/1978, 1978/1979, 1979/1980 and 1980/1981 or in the alternative, partial summary judgment for all of the above tax years except for the years 1977/1978 and 1978/1979.
The basic facts are not disputed. Plaintiffs have a common board of directors and officers. Plaintiff Yeshiva & Mesivta Torah Temimah, Inc. (Yeshiva) maintains and conducts a parochial school at 555 Ocean Parkway, Brook *787 lyn (555 Building). Said premises had been and presently still are exempt from realty taxes. Plaintiff Association acquired the adjoining premises, the 567 Building, a two-family house, on September 5,1974. Initially said premises appear to have been fully used by plaintiff Yeshiva as a workshop and for storage of books. Thereafter, and on July 1, 1977 to December 31, 1978 plaintiff Association commercially rented the first floor of said premises and left to plaintiff Yeshiva the use of the second floor.
It is alleged by the city that alterations of 567 Building “were begun to convert the property to offices for the use of the adjacent school, but were suspended due to lack of funds. In the meantime, it was used in part for storage of school supplies, and in part for a students’ workshop, except for a period from July 1,1977 to December 31,1978 * * * [the period of the rental] * * * When the alterations were resumed in 1980, it was * * * [converted] into a dormitory for students of the school instead of offices. This work was thereafter completed and, commencing in 1981, the entire premises had been used as a students’ dormitory. [Association] does not receive any rent from such use of its property by the Yeshiva.”
The city denied tax exemption to the 567 Building for the year 1975/1976 but did grant tax exemption for the year 1976/1977 and thereafter revoked tax exemption for years 1977/1978 through 1980/1981, upon the ground that the alteration work had been suspended and the property was not being used for exempt purposes. “However, exemption was again granted for 1981/82 and 1982/83 upon completion of the alterations and use of the property as a students’ dormitory”.
This court will not at this late date consider plaintiff’s application to review the denial of tax exemption for the tax year 1975/1976. The mere ownership of realty by a tax exempt organization does not ipso facto entitle it to remission of realty taxes on the property. The determinative factor is the use or nonuse of the property (see People ex rel. Blackburn v Barton, 63 App Div 581; People ex rel. Missionary Sisters of Third Order of St. Francis v Reilly, 85 App Div 71, affd 178 NY 609). Upon the denial of plaintiff’s application, either for valid or invalid reasons, plaintiffs *788 should have then contested such denial, and not in this action. Neither of the parties has submitted to this court the record of the proceedings for tax exemption for the year 1975/1976, so that this court may have some basis on which to rule, even as of this late date, on whether it has authority to consider the validity of the denial of tax exemption for the year 1975/1976. Accordingly, that phase of plaintiffs’ motion is denied.
With respect to the other tax years, the court holds that it has proper jurisdiction and authority to rule thereon. Since different statutes and principles of law apply to the subsequent tax years in question, each year will be considered and determined separately.
For the tax years 1977/1978 and 1978/1979, the city revoked tax exemption because “Occupancy of a portion by a commercial tenant * * * disqualified the portion so used for exemption * * * and the property was qualified, at most, for a partial exemption by reason of the use of, or alterations to make use of, the remaining portion for religious and educational purposes”. The contention of the city is “Under these circumstances, the taxes were not void, but merely erroneous. Correction could have been obtained only by timely application”. Plaintiffs, on the other hand, contend that the exemption portion could not be taxed by the city; that the city failed to give the necessary notice of revocation of exemption, and that in any event the city’s revocation “would only apply to 1978/79 and not to 1977/78 since plaintiffs were not renting the premises on the taxable assessment date for 1977/78, to wit, January 25, 1977”.
For sequential clarity, the court will consider plaintiffs’ contentions in their inverse order.
The contention that the revocation would only apply to the tax year 1978/1979 is in this court’s judgment in contravention of the spirit and rationale of section 494 of the Real Property Tax Law.
Subdivision 2 of section 494 of the Real Property Tax Law provides that in a city having a population of 1,000,000 or more (New York City) a transfer of “title to or possession of property which is exempt from taxation, such property shall immediately become subject to taxation and *789 shall be taxed pro rata for the unexpired portion of the taxable year.” While the statute refers to a transfer of title or possession of the property (the entire property), nevertheless, its application, particularly in large cities, where notice of a change of “possession” is not readily discoverable and where the properties may be multistoried or cover extensive areas, the city should be protected against a nondisclosure and loss of taxes. The court disallows plaintiffs’ claim for exclusion of part of the tax year of 1977/1978.
With respect to the failure of the city to give the statutory notice (NY City Charter, §§ 1511, 1512) of its revocation of tax exemption and the imposition of 100% of the realty tax, the city contends that the notice is required only on an increase of tax assessment and not on a revocation of tax exemption, be it in whole or part. Again, this court will indulge in its own perception and analysis of the meaning, intent and application of said statute.
The rationale and purpose of the notice is to accord to owners of realty who will be called upon to pay a new or higher realty tax a proper opportunity to contest such imposition. The failure to give such notice rendered the imposition void (see Matter of Grand Cent. Bldg, v Tishelman, NYLJ, April 23, 1980, p 10, col 2, affd 78 AD2d 509, mot for lv to app den 52 NY2d 705, 968; Matter of Trump v Tishelman, 80 AD2d 858).
Upon the city’s revocation of the total exemption, concededly erroneous as to the part used for educational purposes, the city, in effect, withheld from plaintiffs notice of such revocation and any opportunity to timely and properly contest the revocation. Plaintiffs learned of the revocation only by the coincidence upon a withholding of funds by a title company because of the realty tax liens. Thus, the city, by its own error granted unto itself a power, proscribed by statute, to tax property, that portion used for religious and educational purposes, and requests this court to place its judicial imprimatur on such power and upon its “windfall” tax income, particularly against an institution that saves the city millions of dollars of education costs by completely assuming that burden. The inequity of the city’s position is self-evident.
*790 This court accordingly construes sections 1511 and 1512 of the New York City Charter to mean and to intend to apply to owners of realty who will be called upon to pay new or additional taxes and to accord them an opportunity to contest such action by the city, particularly as it relates to a revocation of tax exemption, in whole or in part, that requires the payment of a tax not heretofore payable by the tax exempt institution. State law, section 420-a of the Real Property Tax Law may not directly or indirectly nor by admitted error be rendered inoperative. Procedures to question an incorrect revocation of tax exemption, in whole or in part, do not apply to the instant facts and circumstances. The court invalidates the revocation of total tax exemption. However, the court does not fix the value of the first floor in relation to the rest of the building, since the papers before it demonstrate a lack of proof as to (a) whether the premises has a basement, part of which may or may not be potentially usable for tax exempt purpose (b) what percentage of the building area does the first floor apartment represent (c) what greater, lesser or equal market rental value does the first floor have in relation to the conceded tax exempt second floor. If the parties are unable to agree on a reasonable percentage on the nonexempt use of the premises, then a hearing shall be held limited to that issue alone, and to the fixing of the amount of realty tax payable by plaintiffs for the period from July 1, 1977 to December 31, 1978.
After 1978, the city continued to maintain plaintiff’s property on its tax rolls for the tax years of 1978/1979, 1979/1980 and 1980/1981, upon the grounds of cessation of alterations (lack of funds) and that the property was not being used for exempt purposes. The proof before the court and as partially conceded by the city is that plaintiffs did intend to convert the two-story building into a better use and did use at least part of the building for tax exempt purposes during the suspension of its alterations for “lack of funds”.
Due and full recognition of the significance of subdivision 3 of section 420-a of the Real Property Tax Law has not been given or considered by the parties. The language is clear and provides “Such real property from which no *791 revenue is derived [the first floor rental period is not involved in these subsequent tax years] shall be exempt though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon if (a) the construction of such buildings or improvements is in progress or is in good faith contemplated by such corporation or association” (emphasis added).
The city does not claim, nor does it in any language used in its affidavit in opposition declare that plaintiffs abandoned the alterations, the conversion of their property to a better use (office or dormitory). The city merely states that there was a suspension of alterations for “lack of funds”. At best, such suspension is of a temporary nature and does not negate the latter part of subdivision “(a) * * * or is in good faith contemplated by such corporation or association.” The proof of plaintiffs’ good faith is its completion of “improvements to the building and the City’s granting to plaintiffs tax exemption on the completion of the alterations of the building into a dormitory.”
Moreover, “A church or synagogue or school does not shed its exempt character during the summer because of idleness. Constant daily use is not contemplated or compelled. When used, the use must be for the purpose for which the law recognizes as earning exemption. The property here was available for, and susceptible to, use for plaintiff’s purpose; potentially, if not actually, it was in use.
“Were the upper floors utilized for the storage of plaintiff’s files or books, or otherwise ostensibly availed of, such application would meet the city’s objection.” (Congregation Emanu-el of City of N. Y.v City of New York, 150 Misc 657, 659, affd 243 App Div 692.) To the same effect, see Matter of Young Women’s Christian Assn. v Wagner (96 Misc 2d 361, 369), wherein the court stated “Petitioners should not be penalized by a forfeiture of part of their exemption for their act of good business sense in temporarily closing off an entire floor.”
Plaintiff’s property was used as part of an ongoing educational institution though not operating at full capacity. As such, the property was entitled to tax exemption.
*792 Accordingly, the court invalidates the city’s revocation of tax exemption for the tax years 1978/1979 (excepting for the period of partial exemption to December 31, 1978), 1979/1980, 1980/1981 and declares that said property was used for tax exempt purposes.